In the Matter of the TRUSTEESHIP OF the TRUST CREATED UNDER TRUST AGREEMENT DATED DECEMBER 31, 1974; and

In the Matter of the Trusteeship of the Trust Created Under Trust Agreement Dated December 30, 1980; and,

In the Matter of the Trust Created Under Trust Agreement Dated December 30, 1980.

No. A03–454.

Court of Appeals of Minnesota.

Feb. 3, 2004.

Morris M. Sherman, Jane F. Godfrey, David R. Crosby, Leonard, Street and Deinard, Minneapolis, MN; and Judith T. Younger, University of Minnesota Law School, Minneapolis, MN, of counsel, for appellants PAM and DHM.

Richard B. Solum, Joseph K. Thiegs, Dorsey & Whitney, L.L.P., Minneapolis, MN, for respondent Trustees.

Kay Nord Hunt, Phillip A. Cole, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, for respondent beneficiaries.

Considered and decided by
HALBROOKS, Presiding Judge,
KALITOWSKI, Judge, and
STONEBURNER, Judge.

## OPINION

HALBROOKS, Judge.

Respondent trustees brought a petition pursuant to Minn.Stat. § 501B.16 (2002), requesting the district court to determine beneficiaries and interpret terms of three trusts created by settlor JHM. Appellants, JHM's ex-wife PAM and the children born to her during her marriage to JHM (the younger children), challenge the district court's interpretation of trust language determining the beneficiaries of the trusts. Appellants argue that the district court erred by (1) interpreting the subject trusts as limiting beneficiaries to JHM's biological children and (2) concluding that relevant portions of the applicable parentage act did not conclusively establish the biological paternity of the younger children, thereby precluding any subsequent paternity challenge brought by respondent trustees. By notice of review, respondent beneficiaries challenge the district court's conclusion that it lacked personal jurisdiction over the younger children and could not therefore compel them to undergo genetic testing.

We conclude that Minn.Stat. § 501B.16 does not authorize trustees to challenge a previous determination of paternity made consistent with applicable parentage laws, and that the trustees here may not challenge the younger children's paternity in the context of their trust-clarification action. We further conclude that were such a challenge authorized by section 510B.16, it would nonetheless be unavailable to respondent trustees here because of their failure to comply with the standing and timeliness requirements of applicable parentage laws.

## FACTS

In 1974, JHM created an irrevocable trust (the 1974 Trust), the primary beneficiaries of which were his "issue," defined in the trust as "all persons who are descended from [JHM], either by legitimate birth to or legal adoption by him or any of his legitimately born or legally adopted descendants." The 1974 trust authorizes the trustees to make discretionary distributions of trust income and principal to named beneficiaries.

In 1980, JHM created two more irrevocable trusts (the 1980 Trusts), both of which designated JHM's children as beneficiaries, defined "child" as "issue of the first generation," and defined "issue" as

all persons who are lineal descendants of [JHM] (including legally adopted lineal descendants and including lineal descendants in gestation, but not including step-children and foster-children of any generation) except (i) persons who become descendants by legal adoption after attaining the age of 18 years and their descendants and (ii) illegitimate descendants and their descendants.

Each trust provided that neither JHM nor any other person could modify, amend, or revoke the trust in any respect. Each trust is to be interpreted according to law of its situs, which for all three trusts has always been Minnesota. The combined value of the trusts is approximately $900,000,000.

JHM has been married three times. The six children born during his first two

marriages are referred to in this matter as "the older children." JHM married PAM, his third wife, in 1979; they were divorced in 1991. During the marriage, PAM gave birth to DHM (in 1983), CWM (in 1985), and ACM (in 1987), referred to in this matter as "the younger children." On each child's birth certificate, JHM is listed as the father. PAM and DHM, who has since reached majority, are represented in this matter; the district court is representing CWM and ACM pursuant to Minn. Stat. § 501B.19 (2002), which authorizes a court to represent interested minors in trust proceedings.

In 1986, JHM filed a petition to dissolve his marriage to PAM that challenged the paternity of DHM and CWM. ACM was not yet born. JHM subsequently filed a notice of voluntary dismissal of the action, stating that "with respect to the issues raised by him relative to the paternity of [DHM and CWM] . . . [he] voluntarily dismisse[d the] petition *with prejudice.*"

In 1989, the trustees of a fourth trust, created for the benefit of JHM and not at issue here, filed a petition in Minnesota district court seeking authorization to distribute trust assets to JHM's "children," a beneficiary class defined in the trust instrument as "all [of JHM's] legal issue and all adopted children." The petition, which was considered without objection from the older children, identified the younger children as JHM's and therefore eligible to receive trust distributions. In granting the petition, the district court specifically found that DHM, CWM, and ACM were JHM's children.

In 1991, JHM and PAM dissolved their marriage pursuant to a settlement agreement that specifically provided that the younger children are "children of the marriage" and stated that "no additional issue is contemplated." The agreement also provided:

Husband further agrees that in the event of his death, with respect to any testamentary disposition of his assets held by him or in trust for his benefit, the [younger children] shall share equally and no differently than Husband's children from prior or future marriages. The Husband shall insure and require that in the event any new or future trusts are established by him, that the instruments will reflect the above agreement and that this obligation is specifically enforceable by a court of competent jurisdiction.

The agreement's article governing law and venue provides: "The parties agree that if any action or proceeding by either party dealing with the provisions of this Settlement Agreement and/or the [younger children] is commenced, Florida law will govern." The agreement was incorporated into the final judgment of dissolution of marriage entered in Florida in February 1991.

In 1997, respondent trustees, who are neither beneficiaries of the subject trusts nor members of JHM's family, received information that JHM is not the father of PAM's children. Reasoning that they had a duty to ascertain the proper trust beneficiaries, the trustees conducted an investigation and determined that there is a basis to reasonably conclude that PAM's children are not JHM's children.

In April 2000, two of the older children filed, and were granted, a petition in district court to determine JHM's capacity and to appoint them as plenary guardians over his person and property. The petition stated that the younger children are JHM's minor children.

In July 2000, respondent trustees brought a "Petition for Order to Determine Beneficiaries and for Other Relief" pursuant to Minn.Stat. § 501B.16(3), (4)

(2002), which authorizes trustees to request that the district court interpret the terms of a trust in order to identify beneficiaries and determine the nature and extent of their interests. The petition requested an order "[a]uthorizing and ordering such proceedings as are reasonably necessary to identify the proper beneficiaries of the Subject Trusts." In an affidavit accompanying the petition, the trustees asserted that "blood or saliva testing could be used to resolve conclusively the question of the parentage of [the younger children] for the purpose of this proceeding."

The trustees then filed a motion for partial summary judgment, requesting a declaration that any beneficiary of the subject trusts must be a biological descendent of JHM and that the younger children are not JHM's "issue" as the term is defined in the subject trusts. Respondents, the older children, filed a memorandum in support of the trustees' motion. Appellants brought a cross-motion to dismiss the trustees' petition, arguing that the trustees are precluded under the Florida Parentage Act and the Minnesota Parentage Act from challenging the younger children's paternity by (1) the 1991 judgment and decree of dissolution; (2) JHM's voluntary dismissal with prejudice of the 1986 paternity challenge; and (3) the 1989 Minnesota district court order finding the younger children to be JHM's for the purposes of a trust distribution. Appellants also moved for summary judgment on the grounds that the younger children are proper beneficiaries under the terms of the trusts, arguing that the term "issue" in the trusts does not require biological parentage. For the purposes of the cross-motions, the parties stipulated that the younger children "are not the biological children of [JHM]."

By an order issued in June 2002, the district court granted respondent trustees'

motion, concluding that, under the terms of the trusts, beneficiaries must be JHM's biological or adopted children. The court authorized the respondent trustees "to conduct such proceedings and/or investigation as reasonably necessary to determine if the [younger children] are the biological children of [JHM]." The court denied all of appellants' motions, reasoning that (1) as to standing, the respondent trustees were specifically authorized by Minn.Stat. § 501B.16 to ascertain beneficiaries; (2) the 1991 dissolution judgment was conclusive as to the younger children's legitimacy and JHM's paternity for the purposes of child support, but had no preclusive effect on respondent trustees' challenge to the younger children's paternity for the purposes of determining the trust beneficiaries.

In July 2002, respondent trustees filed a Motion for Order Approving Process for Determination of Beneficiary Status in which they requested the district court to declare that the younger children are not the biological children of JHM unless they submit to genetic testing under agreed-upon, court-directed circumstances. Appellants filed motions (1) opposing the genetic-testing proposal; (2) requesting reconsideration of the June 2002 order; and (3) to compel discovery related to respondent trustees' factual inquiry into the younger children's paternity. Appellants' request for discovery was premised on the argument that the younger children's parentage should be determined by "traditional means before any genetic testing." Appellants also argued that respondent trustees' July 2000 petition to determine beneficiaries was barred by the doctrine of laches because the trustees knew as early as December 1997 of allegations questioning the younger children's paternity.

In February 2003, the district court issued an order granting respondent trus-

tees' motion and denying all of appellants' motions. The court subsequently issued a judgment declaring that the younger children are not the biological children of JHM for the purposes of the subject trusts unless they submit to genetic testing within either one year of the order or within one year of attaining majority, whichever is later. The court reasoned that because this is an in rem proceeding, it lacks personal jurisdiction over the younger children and cannot order them to undergo genetic testing. This appeal follows.

### ISSUE

Did Minn.Stat. § 501B.16 (2002) authorize the trustees to seek a determination that JHM is not the younger children's biological father?

### ANALYSIS

■ Appellants argue that the trustees and respondent beneficiaries are precluded from requesting a declaration that the younger children are not JHM's biological issue because such an authorization is not authorized by Minn.Stat. § 501B.16 (2002) where the children's paternity has been previously established pursuant to both Florida and Minnesota parentage laws. Appellants contend that the trustees' challenge to the younger children's parentage action fails to meet those acts' standing and timeliness requirements and is barred by res judicata as an attempt to relitigate a previously adjudicated issue. Statutory construction is a question of law, which we review de novo. *In re Estate of Zeno*, 672 N.W.2d 574, 576 (Minn.App.2003).

Whether Minn.Stat. § 501B.16 authorizes trustees to challenge a beneficiary's parentage, as previously determined by applicable parentage laws, is an issue of first impression in Minnesota. Respondent trustees and respondent beneficiaries first argue that the trustees' action is not governed by either the Florida or the Minnesota Parentage Act because it does not seek to challenge the younger children's paternity as established by those statutes, but is merely seeking to clarify and enforce the terms of the subject trusts pursuant Minn.Stat. § 501B.16. We disagree with respondents' characterization of the trustees' action.

As the filings in this matter make clear, the challenge to the younger children's paternity is the kernel of the trustees' petition. Both respondents requested—and obtained—a declaration from the district court that the younger children are not JHM's biological issue and cannot therefore be trust beneficiaries; without such a declaration, the trustees' petition for clarification would contain no practical request for relief. *Cf. In re Estate of Lamey v. Lamey*, 689 N.E.2d 1265, 1269 (Ind.Ct. App.1997) (holding that where an action to identify heirs will necessarily require an action to determine paternity, "there is no practical difference between these two types of actions"). We further observe that the district court's June 2002 order specifically describes the trustees' action, and allows it to go forward, as "a challenge by the trustees of [JHM's] paternity of the younger children."

We agree with respondents' contention that the trustees have standing to request trust clarification pursuant to Minn.Stat. § 501B.16. But section 501B.16 does not thereby confer standing upon the trustees to challenge the younger childrens' paternity by bringing a collateral attack of a preexisting adjudication of parentage made consistent with applicable parentage laws.

■ We next address whether the applicable parentage law is that of Florida, where the younger children were born and reside, or of Minnesota, the situs of the subject trusts. Although the trusts are

clear that Minnesota law must control their interpretation, the status of a person who may be a beneficiary of an instrument created under Minnesota law is determined by the laws of that person's domicile. *See In re Patrick's Will,* 259 Minn. 193, 196, 106 N.W.2d 888, 890 (1960) (stating that "[w]ith respect to a claimant's right to take from an estate being probated in this state, the status of the claimant is determined by the laws of his domicile, but his rights in the estate are determined by the laws of this state"); Restatement (Second) of Conflicts of Laws § 287 (1971) (stating that generally, the traditional rule is that determinations of paternity status are governed by the local law under which the status was created).

■ "Before applying the choice-of-law analysis, this court must first determine whether the choice of one law will be outcome determinative, i.e., whether there is an actual conflict." *Kearns v. Am. Family Ins. Group,* 486 N.W.2d 796, 798 (Minn. App.1992) (quotation omitted), *review denied* (Minn. Aug. 4, 1992). We therefore consider whether the application of Florida or Minnesota law will lead to different results in this case.

■ In Florida, courts maintain "the presumption that a child born in wedlock is the blood issue of the partners of such marriage." *Knauer v. Barnett,* 360 So.2d 399, 403 (Fla.1978). Parentage proceedings in Florida are governed by the Determination of Parentage Act, Fla. Stat. ch. 742 (2002). That act provides:

> Any woman who is pregnant or has a child, any man who has reason to believe that he is the father of a child, or any child may bring proceedings in the circuit court, in chancery, to determine the paternity of the child when paternity has not been established by law or otherwise.

Fla. Stat. § 742.011. Chapter 742 "is the exclusive remedy for establishing paternity in Florida." *Achumba v. Neustein,* 793 So.2d 1013, 1016 (Fla.Dist.Ct.App.2001).

■ Paternity is established by law "when there has been an adjudication of paternity or by the filing of affidavits or stipulation acknowledging paternity." *G.F.C. v. S.G.,* 686 So.2d 1382, 1385 (Fla. Dist.Ct.App.1997). The Florida Supreme Court has held that "a final judgment of dissolution of marriage which establishes a child support obligation for a former husband is a final determination of paternity." *D.F. v. Dep't of Revenue ex rel. L.F.,* 823 So.2d 97, 100 (Fla.2002). Although subsequent challenges to legally established paternity may be brought pursuant to Fl. R. Civ. P. 1.540 for mistake, newly discovered evidence, or fraud, a motion for relief from a final judgment on any of those grounds must be brought "not more than 1 year after the judgment, decree, order, or proceeding was entered or taken." *Id.* (quoting Fl. R. Civ. P. 1.540(b)(5)); *Florida Dep't of Revenue ex rel. Sparks v. Edden,* 761 So.2d 436, 437 n. 2 (Fla.Dist.Ct.App. 2000) (stating that "[a]bsent a showing of fraud upon the court a trial court is without jurisdiction to permit a challenge to a judgment of paternity more than one year after its rendition").

■ Here, the 1991 dissolution decree, as entered into judgment in Florida, stated that JHM was the younger children's father and established JHM's child-support obligations. We observe that JHM had previously stipulated to paternity of the two elder younger children when he voluntarily dismissed, with prejudice, his 1986 paternity challenge. We conclude that these acts established JHM's paternity of the younger children in Florida as a matter of law. We further observe that even had the younger children's paternity not been established under Florida law,

only "[a] woman who is pregnant or has a child, [a] man who has reason to believe that he is the father of a child, or [a] child" has standing to challenge paternity. Fla. Stat. § 742.011. The trustees therefore lack standing to challenge the younger children's paternity under Florida law. Further, even if they had standing, the trustees' challenge is barred as untimely under Florida law.

■ In its order permitting the trustees to challenge JHM's paternity of the younger children, the district court correctly cited *Daniel v. Daniel*, 695 So.2d 1253, 1254 (Fla.1997), for the proposition that in Florida, "paternity and legitimacy are related, but nevertheless separate and distinct concepts." In *Daniel*, the court held that "legitimacy" refers to the status of a child born during a valid marriage, while "paternity" refers to the status of being the natural, or biological, father of a child. *Id.* at 1254–55. Citing *Daniel*, the district court concluded that Florida law preserves the presumption of legitimacy for children born during a marriage but "clearly permits a challenge to a determination of paternity, subject to various limitations." We find the court's reliance on *Daniel* misplaced in that the parties in *Daniel* stipulated in the marriage dissolution proceeding that the husband was not the biological father of the child born to his wife during the marriage. *See id.* at 1254. In the case before us, paternity was stipulated in an adjudicated dissolution decree. *Daniel* held that a child's legitimacy is unaffected where a former husband raises the issue of paternity during a dissolution proceeding. *Id.* at 1255. The Florida Supreme Court has since held that *Daniel* does not affect the principles that "a final judgment of dissolution of marriage which establishes a child support obligation for a former husband is a final determination of paternity" and that any subsequent challenge to paternity must be brought under the provisions of the rules of civil procedure governing relief from judgment, decrees, or orders. *D.F.*, 823 So.2d at 100.

■ Florida courts have consistently "applied the principle that a divorce decree which establishes the paternity of a child is a final determination of paternity." *Anderson v. Anderson*, 746 So.2d 525, 526 (Fla.Dist.Ct.App.1999) (quotation omitted). The trustees cite no authority permitting them to use the trust-clarification petition to circumvent the standing and timeliness requirements of the Florida Parentage Act or otherwise reopen the dissolution judgment establishing JHM's paternity of the younger children. *See Knauer*, 360 So.2d at 403 (holding that where father's acknowledgement of paternity rendered child legitimate for all purposes, factual proof of paternity by father was unnecessary and irrelevant in declaratory judgment proceeding to determine whether son was "blood issue" of father within meaning of trust instrument). We conclude that under the Florida Parentage Act, when a child is born into a marriage, the law does not expressly authorize a third party, who is not asserting paternity in the child, to petition the court for a mandatory determination of a child's paternity under the guise of a petition to clarify a trust instrument.

■ "[A]s a general matter, foreign dissolution decrees are entitled to full faith and credit from the Minnesota courts." *Mahoney v. Mahoney*, 433 N.W.2d 115, 119 (Minn.App.1988), *review denied* (Minn. Feb. 10, 1989). We therefore conclude that the 1991 Florida dissolution decree and JHM's 1986 voluntary dismissal with prejudice of the 1986 paternity action conclusively established the younger children's status as his biological issue under Florida law. That status is entitled to full faith and credit in Minnesota courts, and

the trustees are therefore barred by the Florida Parentage Act's standing and timeliness requirements from challenging the younger children's paternity.

We next address the younger children's parentage status under Minnesota law. The Minnesota Parentage Act "provides the exclusive bases for standing to bring an action to determine paternity." *Witso v. Overby*, 627 N.W.2d 63, 65–66 (Minn.2001). "Whether the trial court properly interpreted the parentage act is a question of law, which we review without deference to the trial court's conclusions." *In re Welfare of C.M.G.*, 516 N.W.2d 555, 558 (Minn.App.1994). "Whether and when a person may bring a paternity action depends on which presumptions of paternity, if any, apply." *Witso*, 627 N.W.2d at 66 (citing Minn.Stat. § 257.57 (2000)). Under the Minnesota Parentage Act, a man is presumed to be the biological father of a child born to his wife. Minn.Stat. § 257.55, subd. 1(a) (2002). That presumption may be rebutted by clear and convincing evidence, *id.*, subd. 2 (2002), but only by the child, the mother, or the presumptive father, Minn.Stat. § 257.57, subd. 1 (2002), and "in no event later than three years after the child's birth," at which point the presumption becomes irrebuttable. *Id.*, subd. 1(b). Adjudications of parentage under the parentage act are "determinative for all purposes." Minn.Stat. § 257.66, subd. 1 (2002).

The parentage act's standing requirements contain no exceptions. *See Markert v. Behm*, 394 N.W.2d 239, 242 (Minn.App.1986) (observing that the act confers standing "only upon" those persons named). The act's timeliness requirements are similarly inflexible: "The obvious intent of the three-year statute of limitations is to make the presumption of legitimacy conclusive once a child reaches three years of age." *Pierce v. Pierce*, 374 N.W.2d 450, 452 (Minn.App.1985), *review denied* (Minn. Nov. 4, 1985); *see also DeGrande v. Demby*, 529 N.W.2d 340, 343–44 (Minn.App.1995) (holding that "[e]ven in the face of scientific evidence excluding [a party's] biological paternity, the three-year statute of limitations contained in the Minnesota Parentage Act is an absolute bar to an action to declare the father-child relationship nonexistent"), *review granted* (Minn. May 16, 1995), *appeal dismissed* (Minn. July 27, 1995); *Clay v. Clay*, 397 N.W.2d 571, 575 (Minn.App.1986) (holding that even where the former husband "knew or should have known at the time of the dissolution" that the child born of the marriage was not his biological issue, the district court properly refused to vacate the portion of the marriage dissolution decree naming appellant father of the child in question, despite blood tests indicating he could not be the child's father), *review denied* (Minn. Feb. 17, 1987).

In support of its conclusion that "[t]he presumption of legitimacy is not a per se bar to a challenge by the trustees of [JHM's] paternity of the younger children," the district court relied on our decision in *In re Estate of Palmer*, 647 N.W.2d 13 (Minn.App.2002), *aff'd*, 658 N.W.2d 197 (Minn.2003), for the proposition that "[c]lear and convincing evidence of the parentage may be used [to challenge paternity] regardless of the limitations of the parentage act." We find the district court's reliance upon *Palmer* misplaced in that *Palmer* concerned the interpretation of a provision of the Minnesota Probate Code stating that "the parent and child relationship *may* be established under the Parentage Act." *Id.* at 15 (quoting Minn. Stat. § 524.2–114(2) (2000)). We concluded that because "may is permissive ... [t]he probate court's jurisdiction over the determination of heirs and successors is not limited by the Parentage Act." *Id.*

Minn.Stat. § 501B.16, under which the trustees brought their petition for trust clarification, contains no analogous permissive language authorizing the district court to look beyond the parentage act's justiciability requirements to entertain a paternity challenge.

We conclude that because JHM's biological paternity of the younger children was previously adjudicated under Minnesota law and because the trustees did not meet the standing and timeliness requirements of the Minnesota Parentage Act, their attempt to challenge the younger children's established paternity was not authorized by either Minnesota or Florida law. Because we conclude that no actual conflict is created by the choice of whether Florida or Minnesota law applies to the trustees' challenge to the younger children's paternity, no choice-of-law analysis is necessary.

■ In Minnesota, the "parent and child relationship" is "the legal relationship existing between a child and the child's biological or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations." Minn. Stat. § 257.52 (2002). "The guiding principle [of the parentage act] is that the best interests of the child are paramount." *Wilson v. Speer*, 499 N.W.2d 850, 852 (Minn.App.1993), *review granted* (Minn. July 19, 1993), *appeal dismissed* (Minn. Aug. 16, 1993). In *Michael H. v. Gerald D.*, 491 U.S. 110, 119–120, 109 S.Ct. 2333, 2340, 105 L.Ed.2d 91 (1989), the court stated that a determination of parentage made pursuant to a state parentage act reflects

> a substantive rule of law based upon a determination by the Legislature as a matter of overriding social policy, that given a certain relationship between the husband and wife, the husband is to be held responsible for the child, and that

the integrity of the family unit should not be impugned.

(Quotation omitted.) Given the clear statements of policy expressed by the parentage act, we cannot conclude that the legislative intent embodied in that act would be furthered were we to permit third-party challenges to prior adjudications of paternity.

Other courts have reached the same conclusion after applying state parentage acts to facts similar to those before us. In *In re Trust Created by Agreement Dated Dec. 20, 1961*, 166 N.J. 340, 765 A.2d 746 (N.J. 2001), certain trust beneficiaries filed a challenge to a beneficiary's parentage and thus her status as a beneficiary of the trust. *Id.* at 751. The court held that the New Jersey Parentage Act, the applicable terms of which are substantively similar to those before us, foreclosed the beneficiaries' third-party attack on a beneficiary's parentage adjudicated on the basis of an acknowledgement of paternity in a divorce action; the beneficiaries thus could not collaterally attack the parentage in an attempt to exclude the beneficiary. *Id.* at 755. The court specifically found that the term "issue," the same term used in the subject trusts before us, includes children whose paternity has been established under the state parentage act. *Id.* at 757.

Both the Minnesota and Florida parentage acts provide limited opportunity for certain specified individuals to challenge a determination of paternity previously adjudicated in a divorce proceeding. Although Minn.Stat. § 501B.16 authorizes respondent trustees to request a clarification of the trust language, that law does not authorize respondents to circumvent the standing and timeliness requirements of the applicable parentage acts in order to mount a collateral attack on the younger children's paternity. Because we conclude that Minn.Stat. § 501B.16 does not author-

ize the trustees' action, we do not address the alternative grounds for dismissal or the other issues raised by the parties.

## DECISION

Minn.Stat. § 501B.16 (2002) does not authorize trustees to collaterally attack a beneficiary's previously adjudicated parentage where no applicable parentage law authorizes third parties to seek a declaration disestablishing parentage under the guise of a trust-clarification action. The district court therefore erred in permitting respondent trustees to challenge the younger children's paternity and in declaring that the younger children are not the biological issue of JHM. We therefore reverse the district court's decision and order that summary judgment be entered in favor of appellants.

**Reversed.**