Cynthia Mary SCHAEFER, Plaintiff,

County of Stearns, petitioner, Appellant,

v.

Paul Jerome WEBER, Respondent.

No. C8–96–18.

Supreme Court of Minnesota.

July 24, 1997.

Roger S. Van Heel, Stearns County Atty., Richard J. May, St. Cloud, for Appellant.

Stephen P. Larson, St. Cloud, for Respondent.

Amicus curiae Minnesota County Attorneys Ass'n., Janice M. Allen, Anoka.

Amicus curiae Minnesota Dept. of Human Services, Hubert H. Humphrey, III, Attorney General, Peter B. Hofrenning, St. Paul.

## OPINION

GARDEBRING, Justice.

In this case we determine the proper statutory vehicle for a county claim against a parent for past public assistance benefits paid out for benefit of a child. The question before us is this: must a county bring a separate action for recoupment of past public assistance benefits under Minn.Stat. ch. 256, which governs the provision of human services including the Aid to Families with Dependent Children program, or may the county proceed against the father, to recover such benefits, as part of a Parentage Act proceeding, under Minn.Stat. § 257.57 (1996)? We reverse the court of appeals and hold that a county may bring such a claim as part of the Parentage Act proceeding.

The facts in this matter are undisputed. On June 8, 1987, Cynthia Schaefer gave birth to a child. Several days later, respondent Paul Weber signed a declaration admitting paternity of the child.[1] Schaefer began receiving AFDC benefits from Stearns County ("County") to support her child on August 1, 1991, and she continued to receive such benefits until March 31, 1995. During that period, Schaefer received a total of $18,040 in AFDC benefits.

In December 1991, Weber was served with a summons and a complaint that named both Schaefer and the County as petitioners. The action sought to establish the paternity of Schaefer's child. It also asserted claims for past child support, pursuant to Minn.Stat. § 257.66, and for the establishment of an ongoing child support obligation, consistent with Minn.Stat. § 518.551, subd. 5.

No further action was taken on the complaint until July 28, 1995, when Schaefer and the County brought a motion for summary judgment and/or judgment by default.[2] An administrative law judge ("ALJ") granted the motion and concluded, among other things, that Weber was liable to the County for past AFDC benefits paid to Schaefer. However, the ALJ held that under Minn.Stat. § 256.87 (1996), Weber's liability for past AFDC payments was limited to the two years prior to the 1995 motion, rather than two years prior to the 1991 complaint. In essence, the ALJ treated the 1995 motion as a separate assertion of the chapter 256 contribution claim and thus, determined that the two year period of "retroactive liability" began not in 1991, with the filing of the parentage action, but in July 1995, the date of the motion. Weber was ordered to pay the County a total of $4,110.50, which was the total amount of past child support he was deemed able to pay for the two-year period prior to July 1995, during which Schaefer received benefits from the County.

On appeal, the court of appeals affirmed, holding that the County could not properly seek contribution for past AFDC benefits in a parentage action and that such a claim was available only as a separate action under chapter 256 of Minnesota Statutes. *Schaefer v. Weber*, 546 N.W.2d 771, 774 (Minn.App. 1996). Like the ALJ, the court of appeals, in the interests of judicial economy, treated the 1995 motion as the commencement of such a contribution action. *Id.*

Resolution of this matter requires consideration of several related statutory provisions. The Parentage Act, Minn.Stat. §§ 257.51–.74 (1996), provides a mechanism for the establishment of a legal father-child relationship and of the duty of support, in-

---

**1.** The declaration of parentage signed by Weber provided that the declaration "ha[d] the same effect as an adjudication of paternity and may be used as a basis to secure a court order for support under Minnesota Statutes Section 257.55 to 257.66." Although the declaration of parentage gave rise to a presumption of paternity under Minn.Stat. § 257.55, subd. 1(e), Minnesota Statutes section 257.57, subd. 2, provides that an action may nevertheless be brought to legally establish the existence of the father and child relationship.

**2.** We note that the County waited more than 3 1/2 years before taking further action against Weber. Although such a delay is not advisable, it is of no consequence to our ultimate decision in this case.

cluding past support. *See* Minn.Stat. § 257.66, subd. 3.[3] Minnesota Statutes section 257.66, subd. 4, however, limits the parent's liability for past support of the child to "the proportion of the expenses that the court deems just, which were incurred in the two years immediately preceding the commencement of the action." Minn.Stat. § 257.66, subd. 4 (1996).

The other statute at issue in this case, chapter 256 of Minnesota Statutes, governs the provision of human services in Minnesota, including the Aid to Families with Dependent Children ("AFDC") program.[4] Under section 256.87, a parent of a child is liable for the amount of past AFDC assistance that the parent has the ability to pay, and the county that has provided the assistance is specifically authorized to bring an action to enforce that liability. Minn.Stat. § 256.87, subd. 1 (1996). Specifically, the statute provides:

A parent of a child is liable for the amount of assistance furnished under sections 256.031 to 256.0361, 256.72 to 256.87, or under Title IV–E of the Social Security Act or medical assistance under chapter 256, 256B, or 256D to and for the benefit of the child, including any assistance furnished for the benefit of the caretaker of the child, which the parent has had the ability to pay. Ability to pay must be determined according to chapter 518. The parent's liability is limited to the two years immediately preceding the commencement of the action, except that where child support has been previously ordered, the state or county agency providing the assistance, as assignee of the obligee, shall be entitled to judgments for child support payments accruing within ten years preceding the date of the commencement of the action up to the full amount of assistance furnished. The action may be ordered by the state agency or county agency and shall be brought in the name of the county by the county attorney of the county in which the assistance was granted, or by the state agency against the parent for the recovery of the amount of assistance granted, together with the costs and disbursements of the action.

Minn.Stat. § 256.87, subd. 1 (1996).

Another provision of chapter 256 that is also relevant to our resolution of the issue before us, Minn.Stat. § 256.74, subd. 5 (1996), operates as a legal assignment to the county of all rights to child support of a parent receiving AFDC assistance for the benefit of a child.[5] Together these provi-

3. Minnesota Statutes section 257.66, subd. 3 provides in part as follows:

The judgment or order [of the court determining the existence or nonexistence of the parent and child relationship] shall contain provisions concerning the duty of support, the custody of the child, the name of the child, visitation privileges with the child, the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child. Custody and visitation and all subsequent motions related to them shall proceed and be determined under section 257.541. The remaining matters and all subsequent motions related to them shall proceed and be determined in accordance with chapter 518.

Minn.Stat. § 257.66, subd. 3 (1996).

4. AFDC was an entitlement program that provided public assistance to needy families with dependent children. AFDC was financed in part by the federal government and was administered by the states. *See* Social Security Act, 42 U.S.C. §§ 601–617 (1994); Minn.Stat. §§ 256.72–.73 (1996). However, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. Law No. 104–193, 110 Stat. 2105 (1996), eliminated the AFDC program and re-placed it with block grants to states for the Temporary Assistance for Needy Families program, which provides cash assistance to families with children. § 103, 110 Stat. 2112–2161.

5. Minnesota Statutes section 256.74, subd. 5 provides as follows:

An applicant for assistance, or a recipient of assistance, under sections 256.72 to 256.87 or an applicant or recipient for whom foster care maintenance is provided under Title IV–E of the Social Security Act is considered to have assigned to the public agency responsible for child support enforcement at the time of application all rights to child support and maintenance from any other person the applicant may have in the applicant's own behalf or in the behalf of any other family member for whom application is made under sections 256.72 to 256.87 or Title IV–E. The assignment:

(1) is effective as to both current and accrued child support and maintenance obligations;

(2) takes effect upon a determination that the applicant is eligible for assistance under sections 256.72 to 256.87 or that the applicant or family member is eligible for foster care maintenance under Title IV–E of the Social Security Act;

sions provide a framework for resolving the issue before us.

■ The County argues that it is entitled to bring a claim of contribution under the Parentage Act as a matter of law and of policy. Respondent Weber, relying principally upon *County of Ramsey v. Shir*, 403 N.W.2d 714 (Minn.App.1987), *pet. for rev. denied* (Minn., May 28, 1987), argues that the County is not entitled to pursue a claim for contribution in a Parentage Act suit and must instead initiate a separate action under chapter 256.

In *Shir*, the county commenced a paternity action in 1978 on behalf of the mother of a child. However, it was not until 1986 that a motion was made to determine child support and past support obligations. The court of appeals held that the county should have brought a separate action for contribution of past benefits paid to the child under Minnesota Statutes section 256.87. However, in the interests of judicial economy, the court treated the 1986 motion as the commencement of such an action under section 256.87. Thus, the court limited liability for contribution to two years prior to the service of the 1986 motion rather than two years prior to commencement of the paternity action in 1978. 403 N.W.2d at 716. *See also Isanti County Family Servs. and Welfare Dep't. ex rel. Edwardh v. Swanson*, 394 N.W.2d 180, 183 (Minn.App.1986) and *Hennepin County v. Geshick*, 387 N.W.2d 439, 440–41 (Minn. App.1986).

However, as argued by the Minnesota County Attorneys Association in its amicus brief, we conclude that *Shir* and other similar cases by the court of appeals were an unwarranted extension of the holdings in two prior court of appeals decisions. In 1984, the court of appeals decided the two cases of *County of Anoka v. Richards*, 345 N.W.2d 263, 266–67 (Minn.App.1984) and *County of Isanti v. Formhals*, 358 N.W.2d 703, 705 (Minn.App. 1984). In both cases, the defendants challenged the counties' actions for contribution

under section 256.87 on the basis that such actions were an attempt to modify a prior paternity judgment. Thus, the defendants argued that the counties should be required to satisfy the standard for modification of child support under section 518.64, subd. 2. It was in this context that the court of appeals held that section 256.87 provides a separate cause of action to the county for the purpose of recovering a portion of past assistance provided. The court concluded in both cases that the county's action for contribution under section 256.87 was not a modification of the child support provision in the paternity adjudication and was thus not governed by the standard for modification under section 518.64, subd. 2.

However, in cases such as *Shir*, *Swanson*, and *Geshick*, the court of appeals relied on its prior decisions in *Richards* and *Formhals* for the proposition that counties *must* seek contribution in a separate action under section 256.87. Because *Richards* and *Formhals* provide no such authority, we are unpersuaded by the court's decisions in *Shir*, *Swanson*, and *Geshick*.

We further disagree with Weber's argument in light of the connection between the two statutes at issue here. First, as noted earlier, Schaefer had, by operation of law, assigned to the County her right to child support from Weber. Minn.Stat. § 256.74, subd. 5. Subdivision 5 further provides that this assignment is effective as to both current and accrued child support obligations and that the assignment terminates when an applicant ceases to receive assistance, except with respect to the amount of any unpaid support obligation under the assignment. *Id.*

In *Wisconsin ex rel. Southwell v. Chamberland*, 361 N.W.2d 814 (Minn.1985), this court explained the nature of the assignment under section 256.74, subd. 5:

> The assignment of support signed by [the recipient] gave Wisconsin a right to all support owed by [the father] up to the

---

(3) terminates when an applicant ceases to receive assistance under sections 256.72 to 256.87 or when the applicant or family member ceases to receive foster care maintenance under Title IV–E of the Social Security Act,

except with respect to the amount of any unpaid support or maintenance obligation, or both, under the assignment.
Minn.Stat. § 256.74, subd. 5 (1996).

total amount of AFDC expended for the family. The assignment extinguished any right [the recipient] had to recover assigned child support arrearages on her own behalf. The general rule is that the assignee who receives full title and interest 'stands in the shoes of his assignor.' A valid assignment generally operates to vest in the assignee the same right, title, or interest that the assignor had in the thing assigned.

*Chamberland*, 361 N.W.2d at 818 (citations omitted). Thus, under the statute, the county is vested with the sole authority to seek contribution from Weber for AFDC benefits paid to Schaefer.

In turn, the Parentage Act itself directs that in each case in which rights for past support have been assigned to the county by operation of Minnesota Statutes section 256.74, subd. 5, the county "is joined as a party." Minn.Stat. § 257.60 (1996). Further evidence of the linkage between the two statutes occurs elsewhere in the Parentage Act, as well. Minnesota Statutes section 257.66, subd. 3, requires that the financial aspects in a parentage action are to be determined under Minnesota Statutes chapter 518. In chapter 518, "child support" is defined to include an award in parentage proceedings for both future support and for contribution for past public assistance, under section 256.87. Minn.Stat. § 518.54, subd. 4 (1996).

Taken together, these provisions manifest a scheme in which a county that provides AFDC benefits is assigned the exclusive right to recover past child support, as recoupment of such benefits, and is automatically made a party to any subsequent paternity action, in which the duty to repay the county for the past benefits is to be adjudicated. The statutory scheme demonstrates the legislature's intention to allow a number of matters, including parentage, custody, visitation, future support and recoupment of past public assistance, all to be resolved in a single action. While chapter 256 provides an alternative mechanism for the recoupment of past AFDC benefits, nothing in the statute suggests that it is intended as the exclusive vehicle for such a claim.

Thus, we conclude that, although it is somewhat complex, the statutory scheme for recoupment of past child support allows the County to bring its AFDC contribution claim as part of a parentage action.[6]

Our view on this issue is also affected by policy concerns. We note, first, the strong state policy of assuring that children have the adequate and timely economic support of their parents and, second, we are also aware of the need to limit the unnecessary drain of scarce social service and judicial resources. The position urged by respondent Weber runs counter to both these objectives. Requiring counties to pursue in a separate action any claim for contribution for past public assistance benefits would delay the point at which counties could make a claim for contribution because chapter 256 provides for actions brought against "parents." Thus, under the theory urged by respondent Weber, counties would have to postpone any claim they have for contribution until after paternity has been adjudicated in a parentage action and most importantly, parents could further delay the requirement that they provide necessary financial support for their children, thus placing greater burdens on taxpayers and requiring unnecessary use of governmental resources.

■ Based on the language of the Parentage Act itself, on its relationship to related statutory provisions, and on appropriate policy considerations, we hold that the County is entitled to assert its claim for contribution of past AFDC benefits as a part of the parentage action initiated by the County and Schaefer pursuant to Minnesota Statutes sections 257.51–.75. Under Minnesota Statutes section 257.66, subd. 4, Weber is liable to the County for the total amount of child support he was able to pay beginning two years prior to

---

**6.** Although respondent Weber also argues that the 1991 complaint in this case does not adequately assert a claim for recoupment of past AFDC benefits, we are not persuaded. The complaint specifically seeks an order for "past support of the minor child pursuant to Minnesota Statute[s][s]ection 257.66." Given our system of notice pleading, embodied in Minn. R. Civ. P. 8.01, 8.05(a) and 8.06, the reference to "past support" is sufficient under a statutory scheme in which past support includes recoupment of public assistance.

December 1991, the date the Parentage Act proceeding was commenced.

Reversed and remanded for calculation of Weber's liability for contribution.