**In re the ESTATE OF Leonard Earl JOTHAM, Deceased.**

**No. A05–438.**

Court of Appeals of Minnesota.

Oct. 11, 2005.

Raymond A. Charpentier, Charpentier & Lange, Brainerd, MN, for appellant Diann Nelson.

James W. Nelson, Fitzpatrick & Nelson, Brainerd, MN, for respondent Sandra Barnett.

Thomas Pearson, Erickson Pearson & Aanes, Brainerd, MN, for respondent Selma Marie Jotham.

Considered and decided by RANDALL, Presiding Judge; KLAPHAKE, Judge; and WILLIS, Judge.

## OPINION

WILLIS, Judge.

Appellant seeks review of a district court order determining that respondent is, as a matter of law, the child of decedent for purposes of intestate succession. Appellant argues that the district court erred by relying on a presumption of paternity in the Minnesota Parentage Act, Minn.Stat. § 257.55 (2004), and by determining that it could not consider evidence offered by appellant to establish that respondent is not decedent's biological daughter. We conclude that the district court's reliance on a presumption of paternity in the parentage act was proper, but because we also conclude that the district court erred by determining that it could not consider evidence that respondent is not decedent's biological daughter, we reverse and remand.

## FACTS

Decedent Leonard Jotham died intestate on June 8, 2004. His widow filed a petition for adjudication of intestacy, in which she identified herself as the surviving spouse and appellant Diann Nelson and respondent Sandra Barnett as decedent's daughters. Nelson objected to this petition, claiming that Barnett is not decedent's biological daughter.

The parties stipulated to the following facts: (1) decedent and Margaret L. Jotham were married on July 18, 1942; (2) Nelson was born to Margaret Jotham during this marriage; (3) decedent and Margaret Jotham were divorced by a judgment filed on June 11, 1947; (4) Barnett was born to Margaret Jotham on March 16, 1948; and (5) decedent is identified as Barnett's father on her birth certificate, but there has been no judicial determination or written acknowledgment of decedent's paternity of Barnett.

After a hearing, the district court filed an order in which it concluded that, based on a presumption of paternity in the parentage act, as a matter of law Barnett is decedent's biological daughter and is entitled to inherit from decedent according to the laws of intestacy. The district court also concluded that it could not consider evidence offered by Nelson to rebut the presumption that decedent was Barnett's biological father. Nelson appeals from this order.

## ISSUES

I. Did the district court err by applying a presumption of paternity in the par-

entage act to determine the existence of a father-child relationship between decedent and Barnett for purposes of intestate succession?

II. Did the district court err by concluding that it could not consider evidence offered to rebut the presumption that decedent was Barnett's biological father?

## ANALYSIS

Nelson argues that the district court erred by relying on a presumption of paternity in the Minnesota Parentage Act, Minn.Stat. § 257.55 (2004), and by determining that it could not consider evidence that Barnett is not decedent's biological daughter. Statutory construction is a question of law, reviewed de novo by this court. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998).

The Minnesota Probate Code gives a district court "jurisdiction over all subject matter relating to estates of decedents, including construction of wills and determination of heirs and successors of decedents." Minn.Stat. § 524.1–302(a) (2004). The probate code anticipates that in some cases, "for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person." Minn.Stat. § 524.2–114 (2004). In cases not concerning adoption, the probate code provides that "a person is the child of the person's parents regardless of the marital status of the parents and the parent and child relationship may be established under the Parentage Act, sections 257.51 and 257.74." Minn.Stat. § 524.2–114.

The parentage act sets forth nine presumptions of paternity. Minn.Stat. § 257.55, subd. 1 (2004). One of these is that a man is presumed to be the biological father of a child if he and the child's biological mother have been married to

each other and the child is born within 280 days after the marriage is terminated by divorce. *Id.,* subd. 1(a). The district court concluded that this presumption applied to the relationship between decedent and Barnett because Barnett was born 279 days after the filing of the judgment granting a divorce to decedent and Barnett's mother. The district court also concluded that it could not consider evidence that Nelson offered to rebut the presumption because the limitations period for declaring the nonexistence of a father-child relationship had expired.

Nelson first argues that the presumptions of paternity in the parentage act cannot be used to determine Barnett's parentage because the act took effect "decades after [Barnett's] birth" and the limitations period to determine Barnett's parentage "had expired long before the enactment date." Nelson further argues that, if the presumption applies, the district court erred by not considering evidence that Nelson offered to rebut the presumption of decedent's paternity of Barnett.

### I.

■ We first address whether the district court erred by applying a presumption of paternity in the parentage act to a person born before the effective date of the act. The probate code clearly allows a district court to apply the parentage act when determining a father-child relationship for purposes of intestate succession. Minn.Stat. § 524.2–114(2). This section of the probate code took effect on January 1, 1996, and "applies to the rights of successors of decedents dying on or after its effective date." 1994 Minn. Laws ch. 472, § 65(a), (b)(1). When the parentage act took effect, all then-existing statutes for establishing paternity were repealed.

1980 Minn. Laws ch. 589, §§ 1–24, 38, at 1070–1079, 1085.

The district court concluded that "[b]y repealing the existing law at the same time the new law went into effect, there is a clear showing of legislative intent that the Parentage Act be applied to children born before as well as after its enactment." The Minnesota Supreme Court has noted that "[b]efore it can be said that a later act is intended as a substitute for the earlier, 'there must be unmistakable intent manifested on the part of the legislature to make the new act a substitute for the old and to contain all the law on the subject.'" *State v. Target Stores, Inc.*, 279 Minn. 447, 474, 156 N.W.2d 908, 925 (1968) (quoting *State v. Sobelman*, 199 Minn. 232, 236, 271 N.W. 484, 486 (1937)); *see also In re Kayachith*, 683 N.W.2d 325, 327–28 (Minn.App. 2004) (using the legislature's simultaneous repeal of one statute and enactment of another on the same topic to interpret the new statute), *review denied* (Minn. Sept. 29, 2004).

Nothing in the parentage act limits its application to persons born after its effective date. In fact, it is clear that when it adopted the parentage act, the legislature contemplated that it would apply to persons born before the act's effective date. *See* Minn.Stat. § 257.58 (1980) (limiting actions to determine the existence of a father-and-child relationship in certain circumstances to either three years after the birth of the child or three years after the effective date of the act, whichever is later). Considering these facts in light of the legislature's simultaneous repeal of all other then-existing laws for establishing paternity, we agree with the district court, and we conclude that when the legislature adopted the parentage act, it manifested an intent to replace the old act with a new act that contains all of the law on the subject and that the parentage act's pre-sumptions of paternity may be applied to a person born before the effective date of the act.

## II.

■ Next, we consider whether the district court erred by applying the parentage act's three-year limitations period for actions to declare the nonexistence of a father-child relationship and thereby concluding that it could not consider evidence offered by Nelson to rebut the presumption of decedent's paternity of Barnett.

■ The presumptions of paternity codified in Minn.Stat. § 257.55, subd. 1, "are legislative provisions to aid in the recognition of the father and child relationship." *Wilson v. Speer*, 499 N.W.2d 850, 852–53 (Minn.App.1993), *review granted* (Minn. July 19, 1993), *appeal dismissed* (Minn. Aug. 16, 1993). "The presumptions contained in the Parentage Act are not conclusive of paternity, but rather create a functional set of rules that point to a likely father." *State v. Thomas*, 584 N.W.2d 421, 424 (Minn.App.1998) (quotation omitted), *review denied* (Minn. Nov. 17, 1998).

The parentage act limits the time in which a person may bring an action to declare the nonexistence of a father-child relationship presumed under section 257.55, subd. 1(a), to no later than three years after the birth of the child. Minn. Stat. § 257.57, subd. 1(b) (2004). Barnett argues that the district court correctly concluded that this limitation bars any evidence that would rebut the presumption of paternity here.

■ But this probate proceeding was not an action initiated for the purpose of proving the nonexistence of a father-child relationship between decedent and Barnett. An action initiated for the purpose of declaring the nonexistence of a father-child relationship under section 257.57,

subdivision 1(b), is distinguishable from a denial of paternity asserted to rebut the presumption of paternity created by section 257.55, subdivision 1(a). *In re State of Georgia ex rel. Brooks v. Braswell*, 474 N.W.2d 346, 349 (Minn.1991). Therefore, "the right to deny paternity defensively, [when] asserted to rebut a presumption of paternity ... is not subject to time limitations." *Id.* at 350.

Further, this court has noted that the application of the parentage act's limitations period to persons attempting to prove parentage for purposes of intestate succession would frustrate the purpose of the probate code. *See Estate of Martignacco*, 689 N.W.2d 262, 267 (Minn.App. 2004) (noting that applying the parentage act's limitations period to that case "would make it virtually impossible for 'undiscovered,' nonmarital children to establish paternity since the Parentage Act requires this to be done no later than one year after the child reaches the age of majority" and that the legislature sought to remove distinctions between marital and nonmarital children in inheritance claims), *review denied* (Minn. Jan. 26, 2005).

In *In re Estate of Palmer*, the Minnesota Supreme Court noted that the parentage act and the probate code serve distinct purposes:

> [T]he Parentage Act and the Probate Code are independent statutes designed to address different primary rights. The purpose of the Parentage Act is to establish "the legal relationship ... between a child and the child's natural or adoptive parents, incident to which the law confers or imposes rights, privileges, duties, and obligations." Child support is the major concern under the Parentage Act. The purpose of the Probate Code, on the other hand, is to determine the devolution of a decedent's real and personal property. The different pur-

poses the two statutes serve, help to explain why the Legislature contemplated different periods of limitations for filing claims under those statutes.

658 N.W.2d 197, 200 (Minn.2003) (quoting *Wingate v. Estate of Ryan*, 149 N.J. 227, 693 A.2d 457, 463 (1997), and applying to Minnesota law the New Jersey court's descriptions of the separate rationales for its probate code and its parentage act) (alteration in original). In *Wingate*, for purposes of intestate succession, a 31–year old claimant sought to prove that he was the decedent's son under New Jersey's parentage act, which had a 23–year limitations period. 693 A.2d at 458. Applying the reasoning quoted above, the New Jersey Supreme Court held that the New Jersey parentage act's limitations period did not bar the probate claim. *Id.* at 465.

Here, Nelson objected to the petition for formal adjudication of intestacy because she believed that Barnett was erroneously included in the petition as a daughter of decedent. Nelson did not bring an action under section 257.57, subdivision 1(b), to declare the nonexistence of a father-child relationship between decedent and Barnett. Rather, the district court exercised its authority under the probate code to use the parentage act to determine that decedent is presumed to be the father of Barnett, and Nelson sought to offer evidence defensively rebutting that presumption.

■ The parentage act provides that a presumption in section 257.55 "may be rebutted in an appropriate action only by clear and convincing evidence." Minn. Stat. § 257.55, subd. 2 (2004). Subdivision 2 does not limit who may rebut a presumption of paternity nor does it limit an "appropriate action" to one brought under the parentage act. *See id.* Because the probate code's purpose is to help courts determine the devolution of a decedent's property and because the district court has

jurisdiction over all subject matter relating to the determination of heirs, we conclude that, regardless of any limitations period, a district court may consider evidence rebutting a presumption of paternity in determining intestate succession. Therefore, the district court erred as a matter of law when it concluded that it could not consider evidence that Nelson offered to rebut the presumption of decedent's paternity of Barnett.

## DECISION

Because a district court, for purposes of intestate succession, may rely on the presumptions of paternity in the parentage act to determine the existence of a father-child relationship and these presumptions may be applied to children born before the effective date of the parentage act, the district court did not err by applying a presumption of paternity from the parentage act here. But the parentage act's limitations period for actions to declare the nonexistence of the father-child relationship does not apply to determinations of paternity for purposes of intestate succession, and the district court erred by concluding that it could not consider evidence that Nelson offered to rebut the presumption of decedent's paternity of Barnett.

**Reversed and remanded.**