**In re the ESTATE OF Leonard Earl JOTHAM, Deceased.**

**No. A05–438.**

Supreme Court of Minnesota.

Oct. 12, 2006.

Timothy D. Kelly, Kelly & Berens, P.A., Minneapolis, MN, James W. Nelson, Brainerd, MN, for Appellant, Sandra Barnett.

Raymond A. Charpentier, Charpentier & Lange, Brainerd, MN, for Respondent, Diann Nelson.

Thomas C. Pearson, Erickson, Pearson & Aanes, Brainerd, MN, for Selma Marie Jotham.

## OPINION

ANDERSON, PAUL H., Justice.

This case involves a probate proceeding arising out of the death of respondent Diann Nelson's father, Leonard Jotham. Nelson seeks, for purposes of determining intestate succession, to introduce evidence to rebut the presumption that Jotham is the father of appellant Sandra Barnett, which presumption is found in section 257.55, subdivision 1, of Minnesota's Parentage Act. Minn.Stat. § 257.55, subd. 1 (2004). The district court concluded that the statute of limitations in Minn.Stat. § 257.57, subd. 1(b) (2004), bars Nelson from challenging the paternity presumption and declared Barnett to be Jotham's heir as a matter of law. The court of appeals reversed, holding that the district court erred by failing to consider evidence Nelson offered to rebut the presumption that Jotham is Barnett's father. *In re Estate of Jotham*, 704 N.W.2d 210, 215 (Minn.App.2005). We reverse the court of appeals and remand.

The parties stipulated to the essential facts of this case. Leonard Jotham married Margaret Jotham in 1942, and Diann Nelson was born to Margaret Jotham during this marriage. Leonard and Margaret Jotham were divorced in 1947. Sandra Barnett was born to Margaret Jotham 279 days after the judgment of divorce was entered. Barnett's birth certificate identifies Leonard Jotham as her father, but there has been no judicial determination of Jotham's paternity of Barnett, and the parties agreed that Jotham did not acknowledge paternity in writing.

Leonard Jotham, who did remarry, died intestate on June 8, 2004. His widow filed a Petition for Formal Adjudication of Intestacy, Determination of Heirs, and Appointment of Administrator in which she named herself as Jotham's surviving spouse and Nelson and Barnett as his daughters. Nelson objected to the petition, contending that Jotham is not Barnett's father, and thus Barnett is not entitled to share in Jotham's estate.

The parties stipulated to certain facts, and Nelson offered to introduce evidence that Jotham is not Barnett's father. After a hearing on Nelson's objections, the district court issued an order in which it concluded that Jotham is Barnett's father as a matter of law, and thus Barnett is entitled to inherit from Jotham's estate. The court based its conclusion on the presumption of paternity set forth in Minn. Stat. § 257.55, subd. 1(a), of Minnesota's Parentage Act, which provides that a man is presumed to be the father of a child born to the man's former wife within 280 days of the termination of their marriage.[1]

---

1. The district court first considered whether the Parentage Act, Minn.Stat. §§ 257.51–257.74 (2004), applies to individuals born before it was enacted in 1980 and decided that it does apply. The court of appeals agreed with the district court, and the parties did not seek further review of this question. *Jotham*, 704 N.W.2d at 213, 215.

Applying this presumption, the court determined that Barnett is presumed to be Jotham's child because she was born within 280 days of Jotham's divorce from Margaret Jotham. The court concluded that it could not consider the evidence offered by Nelson to rebut this presumption because Nelson's challenge to Jotham's paternity of Barnett is barred by the three-year statute of limitations in Minn.Stat. § 257.57, subd. 1(b). Section 257.57, subdivision 1, provides in pertinent part:

> A child, the child's biological mother, or a man presumed to be the child's father under section 257.55, subdivision 1, paragraph (a), (b), or (c) may bring an action:
> * * *
> (b) For the purpose of declaring the nonexistence of the father and child relationship presumed under section 257.55, subdivision 1, paragraph (a), (b), or (c), only if the action is brought within two years after the person bringing the action has reason to believe that the presumed father is not the father of the child, but in no event later than three years after the child's birth.

Nelson appealed the district court's order, and the court of appeals reversed. *Jotham*, 704 N.W.2d at 210, 215. While the court of appeals agreed that the presumption in section 257.55, subdivision 1(a), applies to this case, the court held that the district court erred by concluding that it could not consider the evidence Nelson offered to rebut the presumption. *Id.* at 215. The court of appeals reasoned that the statute of limitations in section 257.57, subdivision 1(b), by its plain language only limits the time in which "an action to declare the nonexistence of a father-child relationship" may be brought. *Id.* at 213–14; *see* Minn.Stat. § 257.57, subd. 1(b). Because the case at bar was not an action brought under section 257.57 (2004), but rather a probate proceeding in

which, as the court of appeals characterized it, a party sought to defensively rebut a presumption of paternity, the court concluded that the limitations period of section 257.57 did not apply. *Jotham*, 704 N.W.2d at 213–14. The court also observed that another section of the Parentage Act, Minn.Stat. § 257.55, subd. 2 (2004), authorizes rebuttal of a paternity presumption "in an appropriate action," without limiting "an appropriate action" to one brought under the Parentage Act. *Id.* at 214. We granted Barnett's petition for review on the issue of whether Minn.Stat. § 257.57 bars Nelson's attempt to rebut the presumption of Jotham's paternity of Barnett for purposes of intestate succession.

## I.

The construction of a statute is a question of law, subject to de novo review by our court. *In re Estate of Palmer*, 658 N.W.2d 197, 199 (Minn.2003). The goal of statutory construction is "to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2004). A court must construe the words of a statute according to their plain meaning. *River Valley Truck Ctr., Inc. v. Interstate Cos.*, 704 N.W.2d 154, 161 (Minn.2005). If the meaning of the words of a statute is not clear, a court construes the statute by considering the intent of the legislature in drafting the law. Minn.Stat. § 645.16 (2004). Uniform laws are construed to effectuate their purpose of making uniform the laws of the states in which they are enacted. Minn.Stat. § 654.22 (2004).

The Minnesota Probate Code gives district courts "jurisdiction over all subject matter relating to estates of decedents, including * * * determination of heirs and successors of decedents." Minn.Stat. § 524.1–302(a) (2004). The Probate Code recognizes that cases may arise in which a

parent-child relationship must be established in order to determine heirship for purposes of intestate succession. Minn. Stat. § 524.2–114 (2004) (amended 2005). In cases not involving adoption, the Code provides that "a person is the child of the person's parents regardless of the marital status of the parents and the parent and child relationship may be established under the Parentage Act, sections 257.51 and 257.74." Minn.Stat. § 524.2–114.

Minnesota's Parentage Act, Minn.Stat. §§ 257.51–257.74 (2004), was adopted in 1980 and is modeled on the Uniform Parentage Act. *Morey v. Peppin*, 375 N.W.2d 19, 22 (Minn.1985). Minnesota's Parentage Act creates causes of action for individuals seeking to establish the existence or nonexistence of a father-child relationship. Minn.Stat. § 257.57. The standing and timeliness requirements for the causes of action set forth in section 257.57 vary depending on whether the suit is brought for the purpose of declaring the existence or the nonexistence of a father-child relationship and which, if any, of the paternity presumptions apply. *See id.* In particular, section 257.57, subdivision 1(b), imposes a three-year statute of limitations running from the date of the child's birth[2] for an action to declare the nonexistence of a father-child relationship that is presumed based on a marital relationship. Section 257.57, subdivision 1(b), also restricts standing to bring such an action to the child, the child's biological mother, and a man presumed to be the child's father under Minn.Stat. § 257.55, subd. 1(a)-(c).

In addition to creating causes of action, the Parentage Act sets forth nine paternity presumptions, including the presumption that a man is the biological father of a child born to the man's former wife within 280 days of the termination of their marriage relationship. Minn.Stat. § 257.55, subd. 1(a). The Act provides that a presumption of paternity "may be rebutted in an appropriate action only by clear and convincing evidence." Minn.Stat. § 257.55, subd. 2.

■ On appeal to our court, Barnett argues that the three-year statute of limitations and the standing requirements of section 257.57, subdivision 1(b), for actions to declare the nonexistence of a father-child relationship presumed under section 257.55, subdivision 1(a), prohibit Nelson from presenting evidence to rebut the presumption of Jotham's paternity of Barnett. Barnett notes that Nelson does not fall within the limited class of people permitted to bring an action under section 257.57, subdivision 1(b), and that the limitations period for bringing such an action has long since expired. While Barnett's standing argument was not raised either at the district court or at the court of appeals, standing is jurisdictional and thus may be raised at any time. *In re Petition for Improvement of County Ditch, No. 86, Branch 1,* 625 N.W.2d 813, 817 (Minn. 2001); *In re Welfare of Mullins,* 298 N.W.2d 56, 61 n. 7 (Minn.1980).

In opposition to Barnett's argument, Nelson asserts that her effort to rebut the presumption of Jotham's paternity of Barnett cannot be equated with the institution of an action under section 257.57 and thus is not subject to the standing requirements or time limitations of that section. Instead, Nelson contends that she is simply litigating heirship in a probate proceeding, and this proceeding is outside the scope of the Parentage Act.

2. The three-year limitations period is subject to a narrow exception, which is not at issue in this case. Minn.Stat. § 257.57, subd. 1(b).

■ The narrow issue presented for our review is whether the statute of limitations and/or standing requirements in section 257.57, subdivision 1(b), apply to a party in a probate proceeding attempting to rebut a presumption of paternity for intestacy purposes. While this is an issue of first impression for our court, we recently considered a related issue in *In re Estate of Palmer*, 658 N.W.2d 197. In *Palmer*, Michael Smith petitioned for summary distribution of the estate of James Palmer, alleging that Smith was Palmer's child, despite the fact that none of the statutory presumptions of paternity applied. *Palmer*, 658 N.W.2d at 198. Palmer's widow objected, arguing that paternity for purposes of intestate succession must be decided under the methods set forth in the Parentage Act. *Id.* at 199. Had Smith been required to use the Parentage Act to establish paternity, his claim would have been barred by the statute of limitations in Minn.Stat. § 257.58.

In *Palmer*, we interpreted the phrase "may be established" in Minn.Stat. § 524.2–114 as permissive, "permitting, but not requiring, that parentage in a probate proceeding be determined in accordance with the dictates of the Parentage Act." *Id.* Accordingly, we held that, for the purpose of establishing intestate succession, parentage may be established by "clear and convincing evidence apart from the Parentage Act and its time limitation on bringing actions to determine paternity." *Id.* at 197. Nelson contends this language in *Palmer* permits her to introduce evidence to dispute Jotham's paternity of Barnett and obligates Barnett to prove Jotham's paternity by clear and convincing evidence. But Barnett contends, and we agree, that the case before us is distinguishable from *Palmer* in a crucial way. *Palmer* held that, where a party is unable to use the Parentage Act to establish paternity for purposes of intestate suc-

cession, the party may employ an alternative means of establishing paternity—namely, proving paternity by clear and convincing evidence. *See id.* at 197, 198. Here, unlike in *Palmer*, a party is attempting to *challenge* the paternity of an individual who is *presumed* to be the decedent's child, rather than seeking to establish the parentage of one who does not benefit from a presumption of paternity under the Parentage Act. Thus, we conclude that *Palmer* does not decide the outcome of this case.

■■ Instead, this case presents an opportunity for us to clarify when it is appropriate for a probate court to use a Parentage Act presumption to establish paternity for intestacy purposes and when the alternative method described in *Palmer*—clear and convincing evidence of paternity—may be employed. When a party benefits from a Parentage Act presumption of paternity and relies on that presumption to establish paternity in a probate proceeding, the party has chosen to establish paternity under the Parentage Act, as expressly authorized by the Probate Code. *See* Minn.Stat. § 524.2–114. In such a situation, the provisions of the Parentage Act must apply in their entirety. That is, when a party seeking to establish paternity in a probate proceeding invokes a Parentage Act presumption, the provisions of the Act limiting attempts to rebut such a presumption may not be disregarded. Put another way, because the Parentage Act sets forth a carefully constructed, unitary statutory scheme, the presumptions found in section 257.55, subdivision 1, cannot be divorced from the rest of the Act. *Cf. Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 12 (Minn.2002) (noting that a statute must be read and construed as a whole). Our holding in *Palmer* thus does not give probate courts license to pick and choose among the provisions of the Parentage Act when

ascertaining parentage for probate purposes. Accordingly, we conclude that when a party benefits from a presumption of paternity found in the Parentage Act and relies on that presumption to establish paternity in a probate proceeding, the probate court must apply the Parentage Act in its entirety to determine paternity for purposes of intestate succession.

While it appears that no other court has addressed the precise question presented in this case, the New Jersey Supreme Court in *In re Trust Created by Agreement Dated December 20, 1961*, 166 N.J. 340, 765 A.2d 746 (2001) [hereinafter *Trust 1961*], considered a similar issue. In *Trust 1961*, several trust beneficiaries challenged the paternity of another beneficiary, Jenia, thereby contesting Jenia's status as a beneficiary. *Id.* at 751. Under New Jersey's Parentage Act, Jenia was presumed to be the child of the trustor's son and, under the terms of the trust, was therefore a beneficiary.[3] *Id.* at 749, 753. To contest Jenia's parentage, the beneficiaries relied on a provision in the New Jersey Probate Code that a parent-child relationship " 'may be established * * * regardless of the time limitations set forth in [the Parentage Act].' " *Id.* at 754 (alteration and omission in original) (quoting N.J. Stat. Ann. § 3B:5–10).

In rejecting the beneficiaries' challenge, the New Jersey court in *Trust 1961* drew a conceptual distinction between that case and one of its earlier cases, *Wingate v. Estate of Ryan*, 149 N.J. 227, 693 A.2d 457 (1997), which held, as we did in *Palmer*, that an individual who seeks to establish paternity in a probate proceeding but who does not benefit from a presumption of

paternity found in the Parentage Act is not required to use the Parentage Act to prove paternity. *Trust 1961*, 765 A.2d at 754–55. The court in *Trust 1961* noted that the Parentage Act was meant to facilitate, not hinder, the establishment of paternity for inheritance purposes. *Trust 1961*, 765 A.2d at 754–55 (citing *Wingate*, 693 A.2d at 457). The New Jersey court concluded that the holding in *Wingate* applies "principally to parties seeking to *establish* or *confirm* their parentage, as opposed to those seeking to *defeat* the established parentage of others." *Id.* at 755, 166 N.J. 340 (emphasis added).

We agree with the distinction drawn in *Trust 1961* between individuals seeking to establish paternity and those contesting the presumed paternity of another. In the Parentage Act, the legislature also recognized this distinction, differentiating between actions to declare the nonexistence of a presumed parent-child relationship and actions to establish a parent-child relationship. *See* Minn.Stat. §§ 257.57; 257.58. By imposing substantially shorter limitations periods for actions to declare the nonexistence of a presumed parent-child relationship than for suits to declare the existence of such a relationship, the Act evinces a policy favoring the establishment of parent-child relationships. *Compare* Minn.Stat. §§ 257.57, subd. 1(a) (allowing actions to declare the existence of a father-child relationship to be brought at any time), *with* Minn.Stat. § 257.57, subd. 1(b) (requiring actions to declare the nonexistence of a father-child relationship to be brought no later than three years after the child's birth). This policy discouraging challenges to presumed parent-child relationships bolsters our conclusion that, in a

---

3.  In addition, Jenia's paternity had previously been adjudicated in her presumed parents' divorce proceeding. *Trust 1961*, 765 A.2d at 748–49. Though the instant case does not involve a prior adjudication of paternity, the

New Jersey court's analysis in *Trust 1961* is nonetheless instructive, as the court distinguished that case from a case similar to *Palmer*. *See Trust 1961*, 765 A.2d at 754–55.

probate proceeding in which a Parentage Act presumption is invoked, paternity must be determined in accordance with the dictates of the Parentage Act.

## II.

■ Having concluded that, because Barnett benefits from a presumption of paternity, paternity for intestacy purposes must be determined under the Parentage Act, we now turn to the provisions of that Act to ascertain whether the Act permits Nelson to rebut the presumption of paternity in this case. The Parentage Act permits presumptions of paternity to be rebutted in "an appropriate action" by clear and convincing evidence. Minn.Stat. § 257.55, subd. 2. Section 257.55, subdivision 2, provides:

> A presumption under this section may be rebutted in *an appropriate action* only by clear and convincing evidence. If two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court decree establishing paternity of the child by another man.

(Emphasis added.) But the Act does not define "an appropriate action," nor is there a single common meaning of that phrase. *See* Minn.Stat. § 645.08(1) (2004) (providing that phrases in a statute should be construed according to their common and approved usage). Because this phrase is susceptible to more than one reasonable interpretation, we conclude that it is ambiguous. *See Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999). Consequently, we look beyond the words of section 257.55 to ascertain the legislature's probable intent. *See* Minn.Stat. § 645.16. In so doing, we consider the purpose of the Parentage Act and the consequences of a particular construction. *Id.*

■ The legislature's use of the limiting phrase "an appropriate action" demonstrates the legislature's intent to restrict the circumstances in which a presumption of paternity under the Parentage Act may be rebutted. *See In re Nicholas H.*, 28 Cal.4th 56, 120 Cal.Rptr.2d 146, 46 P.3d 932, 941 (2002). To interpret "an appropriate action" to mean any properly instituted legal proceeding would render the phrase essentially meaningless and runs afoul of the rule of statutory construction that dictates that, if possible, no word or phrase of a statute should be deemed superfluous or insignificant. *See Amaral*, 598 N.W.2d at 384; *see also* Minn.Stat. § 645.16 ("Every law shall be construed, if possible, to give effect to all its provisions."). Thus, we conclude that a narrower construction of "an appropriate action" is required.

That the legislature elsewhere in the Parentage Act explicitly created causes of action to declare the nonexistence of a presumed father-child relationship informs our efforts to discern the meaning of "an appropriate action." *See* Minn.Stat. § 257.57. We have said that statutes relating to the same person or thing or having a common purpose should be construed together. *Apple Valley Red–E–Mix, Inc. v. State by Dept. of Public Safety*, 352 N.W.2d 402, 404 (Minn.1984) (explaining the doctrine of *in pari materia*); *see also State v. Lucas*, 589 N.W.2d 91, 94 (Minn. 1999) ("The doctrine of *in pari materia* is a tool of statutory interpretation that allows two statutes with common purposes and subject matter to be construed together to determine the meaning of ambiguous statutory language."). Because section 257.57 and section 257.55, subdivision 2, deal with the same subject matter—challenging presumed father-child relationships—and appear in a single act having a single purpose, we conclude that they are

*in pari materia* and should be construed together. *See In re Improvement of Murray County Ditch No. 34,* 615 N.W.2d 40, 46 (Minn.2000) (quoting *Hagen v. County of Martin,* 253 Minn. 367, 371, 91 N.W.2d 657, 660 (1958)). Reading these sections together strongly suggests that the legislature intended the phrase "an appropriate action" in section 257.55 to signify an action in which the party seeking to rebut a paternity presumption would not be barred by the standing or timeliness requirements in section 257.57 from bringing an action to declare the nonexistence of the presumed father-child relationship.

Other courts analyzing the meaning of "an appropriate action" in the context of the Uniform Parentage Act have similarly concluded that the phrase signifies an action instituted pursuant to the Act.[4] *See P.G. v. G.H.,* 857 So.2d 823, 828 (Ala.Civ. App.2002); *J.A. v. C.J.H.,* 923 P.2d 758, 761–62 (Wyo.1996); *see also Nicholas H.,* 120 Cal.Rptr.2d 146, 46 P.3d at 941. While we are not bound by these courts' interpretations, we endeavor to construe uniform laws to effectuate their purpose of making the laws of the states in which they are enacted consistent with each other. Minn.Stat. § 654.22.

Moreover, as a matter of public policy, construing "an appropriate action" to encompass suits not satisfying the standing and timeliness requirements of section 257.57 would frustrate one of the Parentage Act's primary purposes—the establishment of parent-child relationships—and would be contrary to legislatively established public policy favoring presumptions of legitimacy and the preservation of family integrity. *See* Minn.Stat. §§ 257.55, 257.57; *Schaefer v. Weber,* 567 N.W.2d 29, 30–31 (Minn.1997); *Murphy v. Myers,* 560 N.W.2d 752, 756 (Minn.App.1997); *Pierce v. Pierce,* 374 N.W.2d 450, 452 (Minn.App. 1985). A broad interpretation of "an appropriate action" would permit parties to circumvent the standing and timeliness requirements of section 257.57 and would eviscerate the carefully crafted limitations the legislature has placed on challenges to a presumed father-child relationship. We do not believe that the legislature, which has unmistakably expressed its desire to foster and protect a child's legitimacy, meant in section 257.55 to permit an individual to challenge a sibling's parentage more than 50 years after her birth. Such belated challenges would be destructive of family harmony and stability and would undermine familial relationships long presumed to exist.

Accordingly, we conclude that the phrase "an appropriate action" as used in the first sentence of section 257.55, subdivision 2, is limited to an action in which the party seeking to rebut a paternity presumption would not be barred from bringing an action to declare the nonexistence of the presumed father-child relationship under Minn.Stat. § 257.57. That is, a Parentage Act paternity presumption may be rebutted only by one who meets the standing and timeliness requirements for an action to declare the nonexistence of the presumed father-child relationship under section 257.57. Because Nelson does not satisfy the standing and timeliness re-

---

4. In addition, in the 2002 version of the Uniform Parentage Act, the phrase "in an appropriate action" has been deleted, and the 2002 version explicitly provides that a presumption of paternity under the Act may be rebutted only by an adjudication also obtained under the Parentage Act. National Conference of Commissioners on Uniform State Laws, Uniform Parentage Act § 204 (2002), *available at* http://www.law.upenn.edu/bll/ulc/upa/final 2002.pdf. We read this alteration as a clarification of the meaning of "an appropriate action," indicating that the phrase was meant to denote an action in compliance with the standing and timeliness requirements of the Parentage Act.

quirements of section 257.57, subdivision 1(b), this is not "an appropriate action" within the meaning of section 257.55, subdivision 2, and Nelson cannot attempt to rebut the presumption of Jotham's paternity of Barnett.[5]

### III.

To avoid the statute of limitations of section 257.57, Nelson contends that her attempt to rebut the presumption of Jotham's paternity of Barnett is a defensive denial of paternity not subject to a statute of limitations. Nelson cites earlier decisions of our court in which we stated that a defensive denial of paternity, even when asserted to rebut a paternity presumption, is not subject to time limitations. *State of Georgia ex rel. Brooks v. Braswell,* 474 N.W.2d 346, 349–50 (Minn.1991); *see also Reynolds v. Reynolds,* 458 N.W.2d 103, 105 (Minn.1990). In opposition, Barnett urges us to adopt a narrow definition of a defensive denial of paternity, a definition that Nelson does not meet. Barnett argues that "[a] denial of paternity is defensive only when asserted by the presumed father of the child in an action seeking to enforce a legal duty that exists by reason of the parentage at issue."

Generally, a "statute of limitations may be used as a shield, not as a sword, and * * * the statute of limitations does not bar a party from raising a *pure defense.*" *Reynolds,* 458 N.W.2d at 105. Consequently, we have distinguished between a defensive denial of paternity and

an action to declare the nonexistence of a parent-child relationship pursuant to section 257.57. *See Braswell,* 474 N.W.2d at 349–50; *Reynolds,* 458 N.W.2d at 105; *State ex rel. Ward v. Carlson,* 409 N.W.2d 490, 493 (Minn.1987). We have said that "the right to deny paternity defensively, whether asserted to rebut a presumption of paternity or simply to defend against an allegation of paternity where there is no presumed father, is not subject to time limitations and may be exercised by the defendant in any action in which it is alleged that he is the child's father." *Braswell,* 474 N.W.2d at 350. Because Nelson seeks to offer evidence to rebut a presumption of paternity, the court of appeals characterized Nelson's position as a defensive denial of paternity. *See Jotham,* 704 N.W.2d at 214.

We disagree with the court of appeals and conclude that Nelson is not defensively denying paternity in the sense expressed in *Braswell,* where we spoke only of a denial of paternity "by the defendant in any action in which it is alleged that he is the child's father." *Braswell,* 474 N.W.2d at 350. The cases in which we have discussed defensive denial of paternity all involved a putative or presumed father defending himself against a charge of paternity, either in a divorce proceeding or in a child support action. *See id.* at 348, 350; *Reynolds,* 458 N.W.2d at 104–05; *Carlson,* 409 N.W.2d at 490, 493. Consequently, we conclude that a denial of paternity is defensive only when asserted by a

---

5. Contrary to the dissent's assertion, our opinion today does not render a cause of action under Minn.Stat. § 257.57, subd. 1(a), "superfluous upon expiration of the three-year statute of limitations." Given our conclusion in *State of Georgia ex rel. Brooks v. Braswell,* 474 N.W.2d 346, 349–50 (Minn. 1991), that a presumed father's defensive denial of paternity is not subject to any statute of limitations, a paternity presumption is not

necessarily conclusive after the three-year statute of limitations in section 257.57, subdivision 1(b), has run.

As to the balance of the dissent's argument, while we acknowledge that there is often more than one viable approach to interpreting a statute, we believe that the approach we have taken is the better way to resolve this case because it adheres more closely to the legislature's intent.

presumed or putative father in a suit seeking to enforce against him a legal obligation that exists by reason of the contested father-child relationship.[6]

Here, while Nelson is attempting to rebut a presumption of paternity, the presumption is not being used to bind her to a legal obligation arising out of the presumed parent-child relationship. Further, our case law indicates that only a presumed or putative *father* may be considered to be defensively denying paternity. *See Braswell*, 474 N.W.2d at 350. In addition, Nelson is not asserting a "pure defense," the term used in *Reynolds*, as she is not defending herself against a suit brought by Barnett. *See Reynolds*, 458 N.W.2d at 105.

Because Nelson is not defensively denying paternity, she may only rebut the presumption of Jotham's paternity of Barnett if she can bring action under section 257.57, subdivision 1(b), of the Parentage Act—that is, "an appropriate action." But Nelson plainly does not satisfy either the standing or the timeliness requirements of section 257.57, subdivision 1(b), and thus cannot bring an action to contest Jotham's presumed paternity of Barnett. Accordingly, we conclude that Nelson is barred from attempting to rebut the presumption of Jotham's paternity of Barnett in this probate proceeding. Therefore, we hold that the court of appeals erred in reversing the district court's conclusion that Nelson cannot challenge the presumption of paternity, and we reverse the court of appeals and remand to the district court

for further proceedings consistent with this opinion.

Reversed and remanded.

GILDEA, Justice (dissenting).

I respectfully dissent. I agree with the majority that Barnett benefits from the presumption of paternity found in Minn. Stat. § 257.55, subd. 1(a) (2004). I depart from the majority in its conclusion that the presumption is conclusive. In my view, this construction is inconsistent with the Parentage Act. I would affirm the court of appeals.

The statute of limitations and standing requirements of Minn.Stat. § 257.57, subdivision 1(b) (2004), by the statute's plain language, apply only to actions brought "[f]or the purpose of declaring the nonexistence of [a presumed] father and child relationship." As the court of appeals correctly observed, the case at bar is not such an action. *In re Estate of Jotham*, 704 N.W.2d 210, 213–14 (Minn.App.2005). Rather, this is a probate proceeding instituted for the purpose of determining the appropriate devolution of Jotham's property upon his death. Because Nelson has not brought an action under section 257.57, subdivision 1(b), the requirements in that subdivision do not apply to her attempt to rebut the presumption of Jotham's paternity of Barnett.

Notwithstanding the plain language, the majority imports the statute of limitations and standing requirements of section 257.57 into this case through its construction of section 257.55. In section 257.55, subdivision 2, the Parentage Act provides

---

**6.** *Braswell, Reynolds,* and *Carlson* essentially carve out a narrow exception to our interpretation of "an appropriate action" as an action in compliance with the standing and timeliness requirements of section 257.57. That is, "an appropriate action" means an action in which the party seeking to rebut a paternity presumption would not be barred from bringing an action to declare the nonexistence of the presumed father-child relationship under section 257.57 or a suit instituted against a presumed father seeking to enforce against him a legal duty arising out of the presumed father-child relationship.

that a paternity presumption may be rebutted "in an appropriate action only by clear and convincing evidence." Minn. Stat. § 257.55, subd. 2 (2004). To render the requirements of section 257.57, subdivision 1(b), applicable to Nelson, the majority construes "an appropriate action" to mean a suit in which the party seeking to rebut a paternity presumption satisfies the standing requirements and statute of limitations of Minn.Stat. § 257.57 (2004). I disagree.

We have said that rules of statutory construction "forbid adding words or meaning to a statute that were intentionally or inadvertently left out." *Genin v.1996 Mercury Marquis,* 622 N.W.2d 114, 117 (Minn.2001); *see River Valley Truck Ctr., Inc. v. Interstate Cos., Inc.,* 704 N.W.2d 154, 167 (Minn.2005) ("[T]he rules of statutory construction forbid us from adding words to a statute."); *Phelps v. Commonwealth Land Title Ins. Co.,* 537 N.W.2d 271, 274 (Minn.1995) (noting that courts should not read into statutes restrictions that the legislature did not include). Yet, the majority reads into section 257.55, subdivision 2, the standing and timeliness requirements of section 257.57, restrictions which the plain language of the Parentage Act make inapplicable here.

In my view, if the legislature meant "an appropriate action" to have the narrow meaning the majority ascribes to it, the legislature could have so provided.[1] In fact, in other sections of the Parentage Act, the legislature displayed its ability to specifically identify a Parentage Act suit by referring to a Parentage Act suit as "[a]n action under sections 257.51 to 257.74," Minn.Stat. § 257.65 (2004), "an action to determine the existence of the fa-

ther and child relationship under sections 257.51 to 257.74," Minn.Stat. § 257.651 (2004), and "an action brought under sections 257.51 to 257.74," Minn.Stat. § 257.59, subd. 1 (2004). The legislature's use of a different phrase in section 257.55, subdivision 2, strongly indicates that the legislature meant to denote something other than a Parentage Act suit. *See* 2A Norman J. Singer, *Statutes and Statutory Construction* § 46.06 (6th ed. 2000) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended."); *cf. Vlahos v. R & I Constr. of Bloomington, Inc.,* 676 N.W.2d 672, 677 n. 4 (Minn.2004) ("The legislature would not have employed different terms in different subdivisions of the statute if it had intended those subdivisions to have the same effect.").

I agree with the court of appeals that a probate proceeding such as the instant case is "an appropriate action" in which a presumption of paternity may be rebutted. *Jotham,* 704 N.W.2d at 214–15. Minnesota Statutes § 645.45 (2004) provides that the word "action," when used in a statute, means "any proceeding in any court of this state." "Appropriate" is defined as "suitable" or "compatible." *American Heritage Dictionary of the English Language* 91 (3rd ed.1992); *Merriam–Webster's Collegiate Dictionary* 57 (10th ed.1993); *see also* Minn.Stat. § 645.08(1) (2004) (providing that words in a statute are construed according to their common usage). Permitting rebuttal of a paternity presumption for intestacy purposes does not interfere with the purpose of the Parentage Act, which we have recognized is to enforce child support obligations. *See In re*

---

1. The majority's citation of the 2002 revised version of the Uniform Parentage Act underscores this point. The revision referenced by the majority reveals both that the legislature is perfectly capable of specifying that a pater-

nity presumption may be rebutted only by an action comporting with section 257.57 and that the legislature, not this court, is the appropriate body to do so.

*Estate of Palmer,* 658 N.W.2d 197, 200 (Minn.2003). Thus, I would hold that a probate proceeding is "an appropriate action" within the meaning of section 257.55, subdivision 2.[2]

An examination of other provisions in the Parentage Act confirms that this result accords with legislative intent. For example, in section 257.66, subdivision 1, the legislature provided that a "judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes." Consistent with this provision, a paternity presumption would be conclusive in a probate case if the presumption had been the subject of a court order or judgment. *See id.* The presumption at issue here was not the subject of a "judgment or order of the court," and therefore, consistent with section 257.66, subdivision 1, it should not be deemed conclusive.

The majority's construction, however, converts what the legislature intended to be a rebuttable presumption[3] into a presumption that essentially becomes conclusive after three years. Under the majority's reasoning, a party need not obtain a Parentage Act judgment to conclusively establish a parent-child relationship, as section 257.66 contemplates. Instead, a party may simply wait for the three-year limitations period in section 257.57, subdivision 1(b), to expire and the paternity presumption to become irrefutable.[4] In my view, such a construction runs afoul of the objective that statutes should "be construed as a whole so as to harmonize and give effect to all its parts." *Smith v. Barry,* 219 Minn. 182, 187, 17 N.W.2d 324, 327 (1944).

Because I conclude that this probate proceeding is "an appropriate action" in which a presumption of paternity may be rebutted, I would affirm the court of appeals.

ANDERSON, G. BARRY, Justice (dissenting).

I join in the dissent of Justice Gildea.

---

2. Even if, as the majority concludes, this is not "an appropriate action" within the meaning of section 257.55, our analysis cannot end there. If this is not "an appropriate action," section 257.55, subdivision 2, does not set the evidentiary standard for rebuttal of the paternity presumption, and we must instead look to the common law, which developed its own demanding standard for overcoming a presumption of paternity based on marriage. *See Golden v. Golden,* 282 N.W.2d 887, 889 (Minn.1979); *State v. E.A.H.,* 246 Minn. 299, 306, 75 N.W.2d 195, 200 (1956); *Haugen v. Swanson,* 219 Minn. 123, 127, 16 N.W.2d 900, 902 (1944).

3. As the Minnesota Court of Appeals has said, "[t]he presumptions contained in the Parentage Act are not conclusive of paternity, but rather create a functional set of rules that point to a likely father." *State v. Thomas,* 584 N.W.2d 421, 424 (Minn.App.1998) (quotation omitted), *rev. denied* (Minn. Nov. 17, 1998).

4. In addition, the majority's construction renders the cause of action authorized by section 257.57, subdivision 1(a), superfluous upon expiration of the three-year statute of limitations in subdivision 1(b). *See* Minn.Stat. § 257.57, subd. 1(a) (noting that an action to establish paternity may be brought "[a]t any time"). Because a paternity presumption would be conclusive after the three-year period expired, an action under section 257.57, subdivision 1(a), to declare the existence of a presumed father-child relationship would be unnecessary. Thus, the majority's interpretation of the phrase "an appropriate action" violates the very canon of construction on which the majority purports to rely, that a statute must be construed to give effect to all of its provisions. Minn.Stat. § 645.16 (2004).