**In re ESTATE OF James A. PALMER, Deceased.**

No. C7–02–182.

Supreme Court of Minnesota.

March 20, 2003.

Robert A. McLeod, McLeod & Troy, St. Paul, MN, Attorneys for Appellant, Marie C. Palmer.

David F. Herr, Margaret A. Garvin, Jason A. Lien, Maslon, Edelman, Borman & Brand, LLP, Minneapolis, MN, Richard S. Eskola, Columbia Heights, MN, Attorneys for Respondent, Michael J. Smith.

## OPINION

GILBERT, Justice.

The issue raised by this appeal is whether parentage for the purposes of intestate succession may be established by clear and convincing evidence apart from the Parentage Act and its time limitation on bringing actions to determine paternity. We conclude it may and affirm the decision of the court of appeals.

The facts of this case are undisputed and were stipulated to pursuant to Minn. R. Civ.App. P. 110.04. James A. Palmer

198

(decedent) died on September 22, 1999. He was survived by appellant Marie Palmer, his wife of 51 years. No children were born to decedent and his wife. At the time of his death decedent owned a one-half interest in his home located in Ramsey County, which he inherited upon the death of his father in 1983. Absent respondent Michael J. Smith's challenge, Marie Palmer would receive decedent's entire interest in the home in fee simple, pursuant to Minn.Stat. § 524.2–402(a)(1) (2002). If respondent were found to be decedent's issue, Marie Palmer would receive a life estate in decedent's interest in the home with the remainder interest going to respondent. Minn.Stat. § 524.2–402(a)(2).

Michael J. Smith (Smith) was born on September 7, 1957, to Beverly A. Smith. On January 26, 1959, decedent was charged with the crime of illegitimacy, relating to the birth of Smith. On January 28, 1959, decedent pleaded guilty to that charge. On February 10, 1959, Smith's birth certificate was revised to indicate James A. Palmer as the father with a written note stating, "adjudication of paternity report." There is no evidence that decedent consented to the revision of the birth certificate.[1]

Decedent never acknowledged fathering Smith to his wife or to his closest friend. Smith never visited decedent's home nor did he bring any proceeding to adjudicate paternity before April 16, 2001. Nonetheless, decedent and Smith did have an ongoing relationship. Decedent visited Smith two to three times per week at the Smiths'

home during childhood. He helped Smith's mother move into her home. He referred to Smith as his son and Smith consistently called him dad. He taught Smith auto mechanics, and the two hunted, golfed and made numerous trips to a lake cabin together. He gave numerous gifts to Smith throughout his life, including a ring purchased during his military service. He also divided a $2.00 bill in half for each of them to keep; Smith still has his half of the bill. Decedent and Beverly Smith were close and participated in many family activities. He also attended family outings, graduations and other events as Smith's father, including participating in Smith's wedding as father of the groom. Several pictures were presented to the district court showing decedent's attendance at Smith's family gatherings.

This matter came up for hearing before the Ramsey County District Court. The district court issued an order and memorandum granting Smith's petition for summary assignment/distribution and denying Marie Palmer's objections. The court concluded that the use of the term "may" in Minn.Stat. § 524.2–114(2) (2002) created the inference that the Parentage Act is not the exclusive means of establishing paternity for the purposes of intestate succession. The court went on to hold that since the statute does not mandate the exclusive use of the Parentage Act to determine paternity, parentage may also be established in a probate court proceeding by clear and convincing evidence.[2] The district court then found that Michael J. Smith had established by clear and convincing evidence, unrefuted at trial, the

1. Respondent argues that decedent's 1959 guilty plea to an illegitimacy charge and the subsequent revision of Michael J. Smith's birth certificate to list him as the child's father should be dispositive in determining whether Smith should inherit from decedent. The district court did not base its decision on

the criminal adjudication. Having found in respondent's favor on other grounds, we need not decide the effect of the 1959 adjudication.

2. Ramsey County Probate Court is a division of district court. Minn.Stat. § 2.722, subd. 3 (2002).

existence of the parent-child relationship. Marie Palmer appealed the decision.

The court of appeals affirmed the district court's decision, concluding that parentage for the purposes of intestate succession may be established by clear and convincing evidence apart from the Parentage Act and its time limitation on bringing proceedings to establish paternity. *In re Estate of Palmer*, 647 N.W.2d 13, 16 (Minn.App.2002). Marie Palmer petitioned this court for review of the court of appeals' decision. We granted review.

▮ Statutory construction is a question of law, subject to de novo review by this court. *Doe v. Minnesota State Bd. of Med. Exam'rs*, 435 N.W.2d 45, 48 (Minn. 1989). When interpreting a statute, whenever possible, "no word, phrase or sentence should be deemed superfluous, void, or insignificant." *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999).

▮ Appellant argues that the court of appeals erred by not requiring paternity for the purposes of intestate succession to be decided under the Parentage Act. Appellant claims the lower courts erred by focusing on the word "may" in Minn.Stat. § 524.2–114(2), without analyzing its relation to the preceding phrase in the same sentence: "a person is the child of the person's parents regardless of the marital status of the parents."

Minnesota Statutes § 524.2–114 states:

If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person:

* * * *

(2) In cases not covered by clause (1) [addressing adoption], a person is the child of the person's parents regardless of the marital status of the parents and the parent and child relationship may be established under the Parentage Act, sections 257.51 and 257.74.[3]

The word "may" is permissive. Minn. Stat. § 645.44, subd. 15 (2002). The district court and court of appeals both correctly interpreted Minn.Stat. § 524.2–114 as permitting, but not requiring, that parentage in a probate proceeding be determined in accordance with the dictates of the Parentage Act. *Palmer*, 647 N.W.2d at 16. Appellant's argument that, within the context of the statute, the word "may" is in fact mandatory is not convincing. Indeed, the statute's statement that, "a person is the child of the person's parents regardless of the marital status of the parents," highlights the fact that the legislature has sought to remove the distinctions between marital and nonmarital issue in inheritance claims. Minn.Stat. § 524.2–114; *see Voss v. Duerscherl*, 425 N.W.2d 828, 830 n. 7 (Minn.1988).

Had the legislature wanted parentage for probate purposes to be determined exclusively under the Parentage Act, it could have so provided.[4] But, there exists sound rationale for the legislature's decision to use permissive language. The New Jersey Supreme Court was faced with a similar situation in *Wingate v. Estate of Ryan*, 149 N.J. 227, 693 A.2d 457 (1997), where a 31–year–old claimant sought to prove parentage for the purposes of intestate succes-

---

3. The section of the Minnesota Probate Code at issue here, Minn.Stat. § 524.2–114(2), is similar to Uniform Probate Code § 2–114(a), which provides, "The parent and child relationship may be established under [the Uniform Parentage Act] [applicable state law] [insert appropriate statutory reference]."

Unif. Probate Code § 2–114 (amended 1993), 8 U.L.A. 91 (Supp.2002).

4. The legislature specifically provided, for example, that the Parentage Act does not extend the time limit for asserting a right of succession. Minn.Stat. § 257.58, subd. 2 (2002).

sion under New Jersey's Parentage Act, which provided a 23–year statute of limitations. In *Wingate,* the court held that the New Jersey Parentage Act's statute of limitations did not bar the probate claim. *Id.* at 465. The court explained the differences between the Parentage Act and the Probate Code under New Jersey law.

> [T]he Parentage Act and the Probate Code are independent statutes designed to address different primary rights. The purpose of the Parentage Act is to establish "the legal relationship * * * between a child and the child's natural or adoptive parents, incident to which the law confers or imposes rights, privileges, duties, and obligations." Child support is the major concern under the Parentage Act. The purpose of the Probate Code, on the other hand, is to determine the devolution of a decedent's real and personal property. The different purposes the two statutes serve, help to explain why the Legislature contemplated different periods of limitations for filing claims under those statutes.

*Id.* at 463 (citations omitted). The New Jersey court's rationale is applicable to our law. The distinct purposes of probate and family law justify the legislature's decision not to make the Parentage Act the sole means of establishing paternity for the purposes of probate.

In support of the proposition that the Parentage Act's statute of limitations bars Smith's probate claim, appellant cites *Witso v. Overby,* a paternity case where we stated, "The MPA [Parentage Act] provides the exclusive bases [sic] for standing to bring an action to determine paternity." 627 N.W.2d 63, 65–66 (Minn.2001) (citing *Morey v. Peppin,* 375 N.W.2d 19, 22 (Minn.1985)). However, the probate code through the use of the term "may" explicitly provides that the Parentage Act is not the exclusive means of determining parentage for the purposes of intestate succession. Minn.Stat. § 524.2–114(2). Accordingly, we affirm the court of appeals.

Affirmed.