In the **MATTER OF** the **ESTATE OF: Prince Rogers NELSON, Decedent A16-1545,**

In the Matter of the Estate of: Prince Rogers Nelson, Decedent A16-1546.

**A16-1545**
**A16-1546**

Court of Appeals of Minnesota.

Filed September 5, 2017

James C. Selmer, Marc M. Berg, W. Gustin Vandiford, J. Selmer Law, P.A., Minneapolis, Minnesota; and Charles R. Brown (pro hac vice), Fields & Brown, LLC, Kansas City, Missouri (for appellant Venita Jackson Leverette).

Cameron M. Parkhurst, Sharon H. Fischlowitz, Sussman + Parkhurst, PLLC, Minneapolis, Minnesota (for appellants Darcell Gresham Johnston, Loya Janèl Wilson, Loyal James Gresham III, and Orrine Gresham).

Lori Swanson, Attorney General, St. Paul, Minnesota (respondent State of Minnesota).

Mark W. Greiner, Joseph J. Cassioppi, Sarah M. Olson, Fredrikson & Byron, P.A., Minneapolis, Minnesota (for respondent Comerica Bank and Trust N.A.).

Steven H. Silton, Thomas P. Kane, Armeen F. Mistry, Cozen O'Connor, Minneapolis, Minnesota; and Dexter R. Hamilton (pro hac vice), Cozen O'Connor, Philadelphia, Pennsylvania (for respondents Tyka Nelson and Omarr Baker).

Justin A. Bruntjen, JAB Legal LLC, Minneapolis, Minnesota; and Nicholas Granath, Seham, Seham, Meltz & Petersen, LLP, Minneapolis, Minnesota (for respondent Alfred Frank Alonzo Jackson).

Randall W. Sayers, Nathaniel A. Dahl, Adam J. Rohne, Hanssen, Dordell, Bradt, Odlaug & Bradt, PLLP, St. Paul, Minnesota (for respondents Norrine Nelson, Sharon Nelson, and John Nelson).

Considered and decided by Reilly, Presiding Judge; Johnson, Judge; and Kalitowski, Judge.*

## OPINION

KALITOWSKI, Judge

Appellants challenge the district court's order in this probate dispute, arguing that the district court erred in applying the parentage act's paternity presumption to exclude them as heirs as a matter of law.

## FACTS

Decedent Prince Rogers Nelson was born on June 7, 1958. Decedent's Certificate of Birth lists his parents as Mattie Della Shaw and John L. Nelson. Mattie Della Shaw and John L. Nelson married in 1957 and divorced in 1968. The district court identified decedent and Tyka Nelson as children of Mattie Della Shaw and John L. Nelson in their marriage-dissolution proceeding. John L. Nelson died on August 25, 2001. Probate records identify decedent, Lorna Nelson, Sharon Blakely, Norrine Nelson, John R. Nelson, and Tyka Nelson as the children of John L. Nelson.

Decedent died on April 21, 2016, in Chanhassen, Minnesota. On April 26, Tyka Nelson filed a "Petition for Formal Appointment of Special Administrator" regarding decedent's estate. The petition alleged that Tyka Nelson is a sibling of decedent and that John R. Nelson, Norrine Nelson, Sharon Nelson, Alfred Jack-

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

son, Omarr Baker, and Lorna Nelson are half-siblings of decedent.[1] The district court granted Tyka Nelson's petition and appointed Bremer Trust the special administrator of decedent's estate.[2]

On May 6, the district court authorized the genetic testing of decedent's blood. On May 18, the district court established a procedure for the genetic testing of persons claiming to be heirs of decedent. Under the procedure, any party claiming a genetic relationship to decedent that may give rise to heirship was required to file an affidavit with the district court "setting forth the facts that establish the reasonable possibility of the existence of such a relationship." The district court directed the special administrator to develop a protocol for genetic testing, "after considering the positions of the parties claiming a genetic relationship." In considering the positions of the parties claiming a genetic relationship, the district court instructed the special administrator to consider "the Affidavit, any birth records or Recognition of Parentage, or any other information that establishes a presumption of parentage or an adverse presumption."

On June 6, the district court approved the special administrator's proposed "Protocol Prior to Potential Genetic Testing." The protocol provided that any party claiming a genetic relationship to the decedent that may give rise to heirship was required to submit an affidavit and completed "Request for Parentage Information" questionnaire.

Between June 10 and 16, appellants Darcell Gresham Johnston, Loya Janel Wilson, Loyal James Gresham III, and Orrine Gresham (Gresham appellants) and Venita Jackson Leverette submitted affidavits of heirship and parentage information questionnaires to the special administrator pursuant to the protocol. Gresham appellants claimed that they were half-siblings of decedent through Loyal James Gresham Jr., who they alleged was decedent's father. Leverette claimed that she was a half-sibling of decedent through Alfred Jackson, who she alleged was decedent's father.

The special administrator rejected the appellants' claims. The special administrator found that "[b]ecause they were married when Decedent was born, Mattie Della (Shaw) ... and John Lewis Nelson ... are presumed to be Decedent's genetic parents" and that none of the appellants can challenge that presumption now. The special administrator reasoned that because appellants' claims were "dependent upon another person other than John [L. Nelson] being determined to be Decedent's father" and appellants cannot challenge the presumption that John L. Nelson was decedent's father, appellants were not eligible for genetic testing. Following a hearing regarding the special administrator's protocol, the district court excluded appellants as heirs as a matter of law.[3] The district court reasoned that because "John L. Nelson is the presumed, genetic and adjudicated father of the Decedent and, as the applicants have neither met the standing or timeliness requirements to rebut the presumption of paternity," appellants "are not, as a matter of law, intestate heirs of

---

1. The petition states that Lorna Nelson predeceased decedent.

2. Bremer Trust's appointment as special administrator of the estate concluded on January 31, 2017. Respondent Comerica Bank & Trust, N.A., became personal representative of the estate, effective February 1, 2017.

3. On August 11, 2016, the district court amended its order regarding the genetic-testing protocol and heirship claims to correct errors in the original order unrelated to the issues in these appeals.

the Decedent." Gresham appellants and Leverette appealed separately and this court consolidated their appeals.

## ISSUES

I. Did the district court err in applying the Minnesota Parentage Act to exclude appellants as heirs as a matter of law?

II. Does the protocol prior to potential genetic tests violate the Equal Protection Clauses of the U.S. and Minnesota Constitutions?

## ANALYSIS

### I.

■■■ Appellants argue that the district court erred by using a paternity presumption under the Minnesota Parentage Act to determine that appellants are not heirs of decedent as a matter of law under the Uniform Probate Code.

"Statutory interpretation presents a question of law, which [appellate courts] review de novo." *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 716 (Minn. 2014). The goal of statutory interpretation is "to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2016); *Founders Ins. Co. v. Yates*, 888 N.W.2d 134, 136 (Minn. 2016). When interpreting a statute, appellate courts "read and construe the statute as a whole, giving effect wherever possible to all of its provisions, and interpreting each section in light of the surrounding sections to avoid conflicting interpretations." *Eclipse Architectural Grp., Inc. v. Lam*, 814 N.W.2d 692, 701 (Minn. 2012) (quotation omitted). "Where the legislature's intent is clearly discernable from plain and unambiguous language, statutory construction is neither necessary nor permitted and courts apply the statute's plain meaning." *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001).

The probate code provides that a decedent's "intestate estate passes by intestate succession to the decedent's heirs as prescribed in this chapter, except as modified by the decedent's will." Minn. Stat. § 524.2-101 (2016). There is no dispute in this case that the decedent does not have a will and that the probate code governs the determination of decedent's heirs. Under the probate code, the estate of a decedent who does not have a surviving spouse first passes to the decedent's descendants. Minn. Stat. § 524.2-103 (2016). If the decedent does not have surviving descendants, the estate passes to the decedent's parent or parents. *Id.* If the decedent does not have a surviving descendant or parent, the estate passes "to the descendants of the decedent's parents or either of them by representation." *Id.*

Appellants claim that they are descendants of one of the decedent's parents. Gresham appellants assert that they are half-siblings of decedent through Loyal James Gresham Jr., while Leverette asserts that she is a half-sibling of decedent through Alfred Jackson. Thus, appellants claim that decedent's biological father is someone other than John L. Nelson, the parent from whom John R. Nelson, Norrine Nelson, and Sharon Nelson trace their relation to decedent, and the husband of Mattie Della Shaw at the time of decedent's birth.

The probate code does not directly define "parent" for the purposes of intestate succession. *See* Minn. Stat. § 524.1-201 (2016). However, it does provide that, except for exceptions not relevant here, "if a parent-child relationship exists or is established under this part, the parent is a parent of the child and the child is a child of the parent for the purpose of intestate succession." Minn. Stat. § 524.2-116 (2016). Generally, "a parent-child relationship exists between a child and the child's genetic

parents, regardless of the parents' marital status." Minn. Stat. § 524.2-117 (2016). Under the probate code, a "genetic parent" is "a child's genetic father or genetic mother." Minn. Stat. § 524.1-201(24). The probate code states that " '[g]enetic father' means the man whose sperm fertilized the egg of a child's genetic mother. If the father-child relationship is established under the presumption of paternity under chapter 257, 'genetic father' means only the man for whom that relationship is established." *Id.* (22).

The parentage act's presumption of paternity provides:

> A man is presumed to be the biological father of a child if:

> (a) he and the child's biological mother are or have been married to each other and the child is born during the marriage, or within 280 days after the marriage is terminated by death, annulment, declaration of invalidity, dissolution, or divorce, or after a decree of legal separation is entered by a court.

Minn. Stat. § 257.55, subd. 1(a) (2016).

"A child, the child's biological mother, or a man presumed to be the child's father under section 257.55, subdivision 1, paragraph (a)" may bring an action to declare the nonexistence of the father and child relationship presumed under that section, "only if the action is brought within two years after the person bringing the action has reason to believe that the presumed father is not the father of the child, but in no event later than three years after the child's birth." Minn. Stat. § 257.57, subd. 1(2).

The probate code provides that if a father-child relationship is established under the paternity presumption in the parentage act, the child's "genetic father" is "*only* the man for whom that relationship is established." Minn. Stat. § 524.1-201(22) (emphasis added). Because decedent was born during John L. Nelson's marriage to Mattie Della Shaw, John L. Nelson is decedent's presumptive father under the parentage act. The district court identified decedent as a child of Shaw and Nelson in their marriage-dissolution proceeding consistent with that presumption. Appellants do not challenge John L. Nelson's status as presumed father under the parentage act's paternity presumption. Instead, appellants contend that the district court erred in applying that presumption to exclude them as heirs. Appellants argue that parentage for probate purposes is not exclusively determined under the parentage act and that they may still establish that they are heirs by clear-and-convincing evidence, relying on *In re Estate of Palmer*, 658 N.W.2d 197 (Minn. 2003), *In re Estate of Martignacco*, 689 N.W.2d 262 (Minn. App. 2004), *review denied* (Minn. Jan. 26, 2005), and *In re Estate of Jotham*, 722 N.W.2d 447 (Minn. 2006).

In *Palmer*, the supreme court held that the parentage act is not the exclusive means of establishing paternity, emphasizing that at that time, Minn. Stat. § 524.2-114(2) (2002), provided that a "parent and child relationship *may* be established under the Parentage Act," and that the word "may" was permissive and allowed a claimant to establish a parent-child relationship by clear-and-convincing evidence. 658 N.W.2d at 198-200 (emphasis added). In *Martignacco*, this court relied on *Palmer* in affirming the district court's decision not to apply the time limitations of the parentage act, noting that the supreme court in *Palmer* "based its decision on the permissive nature of the word 'may' in the state probate code" provision addressing the paternity presumption under the parentage act. 689 N.W.2d at 266, 272.

In *Jotham*, the supreme court applied the parentage act in holding that a paternity challenge was barred by the parentage

act's statute of limitations. 722 N.W.2d at 448-457. The supreme court distinguished *Palmer* on the basis that a party in *Jotham* was attempting to "challenge the paternity of an individual who is presumed to be the decedent's child, rather than seeking to establish the parentage of one who does not benefit from a presumption of paternity under the Parentage Act." *Id.* at 452 (emphasis omitted). The supreme court also reasoned that "when a party benefits from a presumption of paternity found in the Parentage Act and relies on that presumption to establish paternity in a probate proceeding, the probate court must apply the Parentage Act in its entirety to determine paternity for purposes of intestate succession." *Id.* at 453.

In 2010, the legislature amended the probate code. 2010 Minn. Laws. Ch. 334, §§ 5-17, at 999-1010. As part of the 2010 amendments, the legislature removed the reference to the parentage act's paternity presumption from Minn. Stat. § 524.2-114 (2008) and added a reference to it in a new definition of "genetic father" in Minn. Stat. § 524.1-201(22) (2016). 2010 Minn. Laws ch. 334, §§ 5-6, at 999-1004. As noted above, that reference to the paternity presumption states that "[i]f the father-child relationship is established under the presumption of paternity under chapter 257, 'genetic father' means only the man for whom that relationship is established." Minn. Stat. § 524.1-201(22). The legislature also added Minn. Stat. §§ 524.2-116 to -117 (2016) to the probate code regarding the parent-child relationship between a child and the child's genetic parents and the effect of the recognition of a parent-child relationship under the probate code on intestate succession. 2010 Minn. Laws ch. 334 § 7-8, at 1004-05.

Because *Palmer*'s holding that the parentage act is not the exclusive means of establishing paternity for the purposes of

intestate succession is based on the permissive word "may" in the paternity presumption reference in the pre-amendment version of Minn. Stat. § 524.2-114, that holding does not apply to the current version of the probate code. *See* 658 N.W.2d at 198-200 (emphasizing that the word "may" is permissive and that "[h]ad the legislature wanted parentage for probate purposes to be determine exclusively under the Parentage Act, it could have so provided"); *see also Martignacco*, 689 N.W.2d at 266 (stating that the supreme court in *Palmer* "based its decision on the permissive nature of the word 'may' in the state probate code" provision addressing the paternity presumption under the parentage act).

■ The supreme court in *Palmer* also reasoned that allowing a claimant to establish paternity independent of the parentage act was consistent with the legislature's expressed desire to "remove the distinctions between marital and nonmarital issue in inheritance claims" and the different purposes of the parentage act and probate code. 658 N.W.2d at 199-200; *see also Martignacco*, 689 N.W.2d at 267 (stating that applying the parentage act's statute of limitations to that case would "make it virtually impossible for 'undiscovered,' nonmarital children to establish paternity" and "clearly frustrate the aims of the legislature when it 'sought to remove the distinctions between marital and nonmarital issue inheritance claims'" (quotation omitted)). However, the clear language of Minn. Stat. § 524.1-201(22) that "'genetic father' means *only* the man for whom" a father-child relationship is established under the paternity presumption if a man has established such a relationship indicates that the legislature intended to limit the ability of claimants to establish parentage by another means when the pa-

ternity presumption applies. (Emphasis added.)

■ Appellants argue that because their heirship claims are not based upon a presumption of paternity under the parentage act *Jotham* allows the district court to forgo application of the paternity presumption to their claims. We disagree. *Jotham* interpreted the former version of Minn. Stat. § 524.2-114. 722 N.W.2d at 451-52. The current language of Minn. Stat. § 524.1-201(22) indicates that if a father-child relationship is established under the paternity presumption under the parentage act, only that father can be the child's genetic father. Thus, even if an heirship claim is not based on the paternity presumption, the paternity presumption still applies to that claim if a father-child relationship is established under the presumption and the claimant seeks to establish a genetic relationship between the claimant and decedent through decedent's father.

■ Leverette contends that she "is not seeking to challenge or defeat the claims of others who have invoked Parentage Act presumptions" and that the district court's "apparent concern that [she] will attempt to use the results of the [genetic] testing to challenge the presumptions of paternity established for other parties is simply unfounded." We disagree. Under Minn. Stat. § 524.1-201(22), in the event that a father-child relationship is established under the paternity presumption, the child can only have one genetic father: the man for whom that father-child relationship has been established under the presumption. When a claimant, in seeking to establish a genetic relationship to a decedent, asserts that the decedent's father is someone other than the decedent's presumed genetic father, that claimant necessarily challenges the presumed genetic father's status. Leverette contends that she "is trying to establish her genetic

relationship to Decedent by showing she is a 'descendant of decedent's parents,' specifically his half-sibling" and seeks genetic testing to determine whether she is related to decedent. Because Leverette attempts to establish that decedent had a genetic father-child relationship with a man other than John L. Nelson, decedent's presumptive father, Leverette's claim is a challenge to Nelson's status as decedent's father.

Gresham appellants contend that "[a] potential heir need not share a genetic parent with a decedent in order to be determined to be an heir." But Gresham appellants do not develop this argument. And they do not explain how their heirship claim is based on a ground other than that they share a genetic parent with decedent. Because Gresham appellants, like Leverette, seek genetic testing to establish their genetic relationship to decedent by showing that they are descendants of decedent's father, their heirship claim is a claim that they share a genetic father with decedent and is subject to the definition of "genetic father" in Minn. Stat. § 524.1-201(22).

■ Appellants contend that because there are clear differences between the underlying purposes of the probate code and the parentage act the district court erred in applying the parentage act's paternity presumption in deciding that appellants are precluded as heirs as a matter of law. Appellants note that the probate code governs questions regarding the distribution of an estate after death, such as the determination of heirs, and that the parentage act governs issues regarding a living parent's responsibility to children, such as the payment of child support. They point out that the supreme court recognized the different purposes of the parentage act and probate code in *Palmer. See* 658 N.W.2d at 200. Although appellants are correct that the two acts generally

have different purposes, the legislature's specific reference to the parentage act and use of the exclusive word "only" in Minn. Stat. § 524.1-201(22) indicate that it intended that the parentage act's paternity presumption govern claims regarding a decedent's genetic father in probate proceedings if a father-child relationship has been established under that presumption.

Because John L. Nelson is decedent's presumptive father under the parentage act, he is the only person who can be decedent's "genetic father" under the probate code. *See* Minn. Stat. § 524.1-201(22). The two individuals that Gresham appellants and Leverette, respectively, allege are decedent's real biological father thus cannot be decedent's "genetic father" under the probate code. Under the probate code, a parent-child relationship exists between decedent and his "genetic parents" and decedent's "genetic father" is a parent of decedent for the purpose of intestate succession. Minn. Stat. §§ 524.2-116 to -117. John L. Nelson is therefore decedent's father for the purpose of intestate succession and the estate passes to his surviving descendants and Mattie Della Shaw's surviving descendants. *See* Minn. Stat. § 524.2-103. Appellants do not allege that they are descendants of John L. Nelson or Mattie Della Shaw. Appellants are therefore not heirs of decedent as a matter of law based on the plain language of the relevant parentage act and probate code provisions. The district court did not err in excluding appellants as heirs.

## II.

Gresham appellants also contend that the "protocol adopted by the district court violates the equal protection clauses of the U.S. and Minnesota Constitutions." Gresham appellants argue that the "United States Supreme Court has often struck down classification schemes that draw distinctions that exclude children born out-side of wedlock ... from treatment as siblings." Gresham appellants argue that "where, as here, the inquiry into parentage and granting of rights cannot destroy the integrity and privacy of an extant marital family, the use of irrebuttable presumptions is not defensible."

"A reviewing court must generally consider only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted); *see also In re Welfare of C.L.L.*, 310 N.W.2d 555, 558 (Minn. 1981) (stating that an "appellant cannot now for the first time raise constitutional issues that were not raised in the [district] court").

Gresham appellants did not raise an Equal Protection Clause challenge in their objection to the genetic-testing protocol in the district court, and the district court did not decide that issue. Although Gresham appellants filed a "Notice of Constitutional Challenge" in the district court, they filed it on September 27, 2016, more than a month after the district court issued its amended order regarding the genetic-testing protocol and their heirship claims, and the same day Gresham appellants filed their notice of appeal. The district court had no opportunity to consider their constitutional claim and decide that claim prior to this appeal. Gresham appellants' equal-protection claim is thus forfeited.

## DECISION

Because appellants are not heirs of decedent based on the plain language of the parentage act and probate code, the district court did not err in excluding appellants as heirs as a matter of law.

**Affirmed.**