# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 10

In the Matter of the Estate of Arlen Lindberg, Deceased

| | |
|---|---|
| Sheri Langer, Personal Representative, | Petitioner |
| v. | |
| Evelyn Lindberg, Marlene Mae Smith, Sandra Lindberg, Roger Lindberg, Patricia Arvidson, | Respondents and Appellees |
| and | |
| Chad Hanson, | Interested Party and Appellant |

### No. 20230102

Appeal from the District Court of Towner County, Northeast Judicial District, the Honorable Michael P. Hurly, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Tufte, Justice.

Arne F. Boyum, Rolla, N.D., for respondents and appellees.

Ross A. Nilson, Fargo, N.D., for interested party and appellant.

**Tufte, Justice.**

[¶1]   Chad Hanson appeals from a district court order denying his petition to determine heirship and motion for summary judgment, and from a second order denying his motion under Rules 59(j) and 60(b)(6), N.D.R.Civ.P. We reverse the orders and remand for proceedings consistent with this opinion.

I

[¶2]   Arlen Lindberg died intestate. Informal probate proceedings commenced, and Hanson filed a petition to determine heirship, alleging he is Arlen Lindberg's son and only child. Hanson's mother provided an affidavit stating Arlen Lindberg was Hanson's biological father and knew about the pregnancy. The Estate responded by requesting genetic testing to determine Hanson's heirship. The Lindberg family also filed a response in opposition to Hanson's petition and requesting DNA testing.

[¶3]   Arlen Lindberg's mother and siblings moved to dismiss the petition to determine heirship, arguing Arlen Lindberg's parental rights to Hanson were terminated when Hanson's step-father adopted him, and therefore he cannot be adjudicated Hanson's father. Hanson moved for summary judgment, arguing North Dakota law established him as heir to Arlen Lindberg's estate. DNA test results filed with Hanson's motion showed Hanson had a 99.7% chance of relatedness to Arlen Lindberg's biological brother.

[¶4]   The district court heard argument on the motions, and both parties agreed the court had a sufficient record to rule on the motions without proceeding to trial to receive evidence. The court concluded that to determine heirship, North Dakota's Uniform Probate Code (U.P.C. 2010) provision defining "genetic father," N.D.C.C. § 30.1-04-14(5) (U.P.C. § 2-115(5)), requires the application of the presumption of paternity in North Dakota's Uniform Parentage Act (U.P.A. 2002) under ch. 14-20. The court further concluded the action to determine paternity was untimely because N.D.C.C. § 14-20-42(1) required the action to commence within two years of birth, and Hanson had a

"presumed father" under the U.P.A. On November 4, 2022, the court disposed of the motions, denying Hanson's petition to determine heirship and motion for summary judgment.

[¶5]   On December 2, 2022, Hanson moved to alter or amend the judgment under N.D.R.Civ.P. 59(j) or "reopen" the court's order under N.D.R.Civ.P. 60(b)(6), arguing the district court misapplied the law and undisputed facts and violated the equal protection clause of the North Dakota and United States Constitutions. The court denied the motion on February 17, 2023, and notice of entry of the order was served on Hanson on February 23. On April 18, Hanson appealed.

II

[¶6]   Before we consider the merits of an appeal, we must first confirm we have jurisdiction. *Hoffarth v. Hoffarth*, 2020 ND 218, ¶ 5, 949 N.W.2d 824. Hanson appeals the November 4, 2022 order denying his petition to determine heirship, and the order denying his motion seeking relief under Rules 59(j) and 60(b)(6), N.D.R.Civ.P. An appeal must be filed within 60 days from service of notice of entry of the judgment or order being appealed. N.D.R.App.P. 4(a)(1). The record contains no indication that notice of entry of the November 4 order denying Hanson's petition was served on him. "When notice of entry of an order has not been served on a party, the time to appeal may commence at the point actual knowledge by the appealing party of the entry of the order is 'clearly evidenced in the record.'" *Sholy v. Cass Cnty. Comm'n*, 2022 ND 164, ¶ 6, 980 N.W.2d 49 (quoting *Domres v. Domres*, 1998 ND 217, ¶ 9, 587 N.W.2d 146). Hanson's knowledge of the order is first evidenced in the record in the next docket entry, which is his December 2, 2022 notice of motion accompanying his motion under Rules 59(j) and 60(b)(6). Hanson's time to appeal this order began on that day and expired on January 31, 2023, unless it was tolled. Hanson's motion was filed within 28 days of the order denying his petition and thus tolled the time to appeal under N.D.R.App.P. 4(a)(3)(A)(iv) and (vi). *C & K Consulting, LLC v. Ward Cnty. Bd. of Comm'rs*, 2020 ND 93, ¶ 13, 942 N.W.2d 823. Because Hanson's notice of appeal was filed within 60 days of service of

2

the notice of entry of the order disposing of the motion, his appeal from both orders is timely.

## III

[¶7]   The dispositive question in this appeal is the interpretation of two uniform acts relating to parentage determination: the Uniform Parentage Act and the Uniform Probate Code. Hanson argues the U.P.C. permits (but does not require) the use of the U.P.A. as one of several options for establishing a "genetic father" under the U.P.C. The Lindberg family argues the U.P.A. (and not the U.P.C.) controls determination of genetic parents.

[¶8]   We review questions of statutory interpretation de novo. *Gomm v. Winterfeldt*, 2022 ND 172, ¶ 16, 980 N.W.2d 204. We have explained:

> The primary objective in interpreting statutes is to determine the intention of the legislation. *Amerada Hess Corp. v. State ex rel. Tax Comm'r*, 2005 ND 155, ¶ 12, 704 N.W.2d 8. Words in a statute are given their plain, ordinary and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05. We construe statutes to give effect to all of their provisions so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1-02-38(2) and (4). "We interpret uniform laws in a uniform manner, and we may seek guidance from decisions in other states which have interpreted similar provisions in a uniform law." *In re Estate of Allmaras*, 2007 ND 130, ¶ 13, 737 N.W.2d 612. *See* N.D.C.C. § 1-02-13 (uniform laws must be construed to effectuate general purpose to make uniform the laws of enacting states). When we interpret and apply provisions in a uniform law, we may look to official editorial board comments for guidance. *In re Estate of Gleeson*, 2002 ND 211, ¶ 7, 655 N.W.2d 69.

*Matter of Bradley K. Brakke Trust*, 2017 ND 34, ¶ 12, 890 N.W.2d 549.

[¶9]   The parties do not dispute Arlen Lindberg died intestate and without a spouse. The U.P.C. provides, "[a]ny part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs as prescribed in this title[.]" N.D.C.C. § 30.1-04-01(1) (U.P.C. § 2-101). "[I]f there is no surviving spouse, [the entire estate passes] [t]o the decedent's descendants[.] N.D.C.C. § 30.1-04-03 (U.P.C. § 2-103). "If there is no surviving descendant, to the decedent's parents equally if both survive, or to the surviving parent." *Id*.

[¶10] "[I]f a parent-child relationship exists or is established under sections 30.1-04-14 [U.P.C. § 2-115] through 30.1-04-20 [U.P.C. § 2-121], the parent is a parent of the child and the child is a child of the parent for purposes of intestate succession." N.D.C.C. § 30.1-04-15 (U.P.C. § 2-116). Except as provided by law, "a parent-child relationship exists between a child and the child's genetic parents, regardless of their marital status." N.D.C.C. § 30.1-04-16 (U.P.C. § 2-117). A genetic parent is "a child's genetic father or genetic mother." N.D.C.C. § 30.1-04-14(7) (U.P.C. § 2-115(7)). Under N.D.C.C. § 30.1-04-14(5) (U.P.C. § 2-115(5)), a "genetic father" is defined:

> "Genetic father" means the man whose sperm fertilized the egg of a child's genetic mother. If the father-child relationship is established under the presumption of paternity under subdivision a, b, or c of subsection 2 of section 14-20-07, the term means only the man for whom that relationship is established.

[¶11]  Hanson, relying on *In re Estate of Heater v. Carlon*, 2021 UT 66, 498 P.3d 883, argues a parent-child relationship exists between Arlen Lindberg and himself under section 30.1-04-14(5) (U.P.C. § 2-115(5)) because *Heater* held the U.P.C. allows determination of parentage either through genetic testing under the probate code or the parentage act. *Id*. at ¶ 39. In *Heater*, the Utah Supreme Court interpreted the parent-child relationship provisions of the previous version of the U.P.C. that has been superseded in North Dakota. The relevant statutory language is substantially revised, so it provides guidance only to the extent that the previous version of the U.P.C. should be interpreted to permit the Parentage Act provisions as an alternative rather than an exclusive way to establish parentage.

[¶12] Minnesota has enacted both the U.P.C. (2010) and the U.P.A. (1973). The Minnesota Court of Appeals interpreted Minnesota's U.P.C. definition of "genetic father" in circumstances similar to those here in *Matter of Estate of Nelson*, 901 N.W.2d 234 (Minn. Ct. App. 2017). The court concluded:

> [T]he clear language of [the statute] that "'genetic father' means only the man for whom" a father-child relationship is established under the paternity presumption if a man has established such a relationship indicates that the legislature intended to limit the ability of claimants to establish parentage by another means when the paternity presumption applies.

*Id.* at 240-41. The court concluded genetic testing is not necessary when an individual has a presumptive father under the U.P.A. because the U.P.C. deems the presumptive father as the individual's genetic father as a matter of law. *Id.* at 241-42.

[¶13] Minnesota's enactment of the U.P.C. differs from N.D.C.C. § 30.1-04-14(5) (U.P.C. § 2-115(5)) in a significant way. Uniform Probate Code § 2-115(5) (2010) defines "genetic father" as "the man whose sperm fertilized the egg of a child's genetic mother. If the father-child relationship is established under the presumption of paternity under [insert applicable state law], the term means only the man for whom that relationship is established." As enacted in Minnesota, the bracketed reference to "[insert applicable state law]" was replaced with "chapter 257," which is a reference to the entire chapter of legislation containing, among other things, the Parentage Act. Minn. Stat. § 524.1-201. North Dakota enacted this definition consistent with the Uniform Probate Code's legislative note, which advises states having the Uniform Parentage Act (2000) to "replace 'applicable state law' in [the definition of genetic father] with 'Section 201(b)(1), (2), or (3) of the Uniform Parentage Act (2000)." Materially different from Minnesota's reference to the entire Parentage Act, the uniform act and North Dakota's enactment reference only specific subsections of the Parentage Act provisions, including those relating to (a) an unrebutted presumption of paternity, (b) an acknowledgment of paternity, and (c) an adjudication of paternity. Unlike Minnesota's act, but consistent with the uniform act's legislative note, North Dakota's Probate Code

does not reference N.D.C.C. § 14-20-07(2)(d) (U.P.A. § 201(b)(4)), which provides for establishing the father-child relationship by "adoption of the child by the man."

[¶14] Both North Dakota and Minnesota enacted the same U.P.C. definition of "genetic father," but Minnesota deviated from the uniform act when it cross-referenced substantively different provisions relating to the presumption of paternity. Because the cross-referenced statutes relating to presumption of paternity are material to our decision here, *Estate of Nelson* is not persuasive authority for the proposition that the U.P.A. requirements must be satisfied to determine whether Hanson is an heir of Arlen Lindberg under the U.P.C.

IV

[¶15] Hanson argues, even if the U.P.A. does apply, there is not a presumption of paternity between his stepfather Harlan Hanson and himself.

[¶16] We review the district court's order denying a petition to determine heirship and denying a motion for summary judgment.

> In reviewing a mixed question of fact and law, the underlying predicate facts are treated as findings of fact, and the conclusion whether those facts meet the legal standard is a question of law. Questions of law and statutory interpretation are fully reviewable on appeal. Findings of fact must not be set aside unless clearly erroneous.

*Pierce v. Anderson*, 2018 ND 131, ¶ 11, 912 N.W.2d 291 (cleaned up).

[¶17] Under N.D.C.C. § 30.1-04-14(5) (U.P.C. § 2-115(5)), if "the father-child relationship is established under the presumption of paternity under subdivision a, b, or c of subsection 2 of section 14-20-07, the term means only the man for whom that relationship is established." Section 14-20-07, N.D.C.C., of the U.P.A. states in relevant part:

> The father-child relationship is established between a man and a child by:

6

> a. An unrebutted presumption of the man's paternity of the child under section 14-20-10;
>
> ....
>
> c. An adjudication of the man's paternity;
>
> d. Adoption of the child by the man;
>
> ....

N.D.C.C. § 14-20-07(2) (U.P.A. § 201(b)).

## A

[¶18] The parties agreed Harlan Hanson and Hanson lived together for some time during the first two years of Hanson's life, and Harlan Hanson held Hanson out as his own son. The district court applied section 14-20-10(1)(e), N.D.C.C. (U.P.A. § 204(a)(5)), which states, "For the first two years of the child's life, he resided in the same household with the child and openly held out the child as his own." The court concluded these facts establish a presumption of paternity under N.D.C.C. § 14-20-10(1)(e) (U.P.A. § 204(a)(5)), and Harlan Hanson was Hanson's genetic father under N.D.C.C. § 30.1-04-14(5) (U.P.C. § 2-115(5)) ("If the father-child relationship is established under the presumption of paternity under subdivision a, b, or c of subsection 2 of section 14-20-07, the term means only the man for whom that relationship is established."). We disagree.

[¶19] The U.P.A. provision requires more than simply living in the same household at some time during the first two years of the child's life, as the district court interpreted it. The statute provides a minimum duration—it requires living in the same household "*for* the first two years" of the child's life. The Editorial Board Comments to the Uniform Parentage Act explain the reasoning behind this amendment. The provision was a "significant revision" of the prior parentage act, which specified "no time frame" and "fostered uncertainty about whether the presumption could arise if the receipt of the child into the man's home occurred for a short time"; this provision provides an "express durational requirement that the man reside with the child for the first two years of the child's life." (U.P.A. § 204 (amended 2002)). The record shows Hanson was born on September 23, 1977. His mother married Harlan Hanson on December 2, 1978, and Harlan adopted Hanson on March 19, 1979. The

district court misapplied the law when it concluded it was sufficient under the U.P.A. to reside with and be held out as a child "during" the first two years of the child's life.

[¶20] The undisputed facts relied upon by the district court do not establish a presumption of paternity under N.D.C.C. §§ 14-20-07(2)(a) (U.P.A. § 201(b)(1)) and 14-20-10(1)(e) (U.P.A. § 204(a)(5)).

B

[¶21] The court also concluded Harlan Hanson's adoption of Hanson adjudicated Harlan Hanson as Hanson's father, establishing a presumption of paternity under N.D.C.C. § 14-20-07(2)(c) (U.P.A. § 201(b)(3)).

[¶22] Adoption and adjudication are different. *Compare* N.D.C.C. § 14-20-07(2)(c) (U.P.A. § 201(b)(3)) (adjudication), *with* N.D.C.C. § 14-20-07(2)(d) (U.P.A. § 201(b)(4)) (adoption). Under the U.P.C.'s definition of genetic father, N.D.C.C. § 30.1-04-14(5) (U.P.C. § 2-115(5)) lists presumed paternity, acknowledged paternity, and adjudicated paternity in N.D.C.C. §§ 14-20-07(2)(a), (b) and (c) (U.P.A. § 201(b)(1), (2), and (3)), but omits N.D.C.C. § 14-20-07(2)(d) (U.P.A. § 201(b)(4)) regarding adoption. Adoption is not merely one type of adjudication. Were it otherwise, N.D.C.C. § 14-20-07(2)(d) (U.P.A. § 201(b)(4)) would be superfluous and only 2(c) (U.P.A. § 201(b)(3)) would be necessary. *See Kutcka v. Gateway Bldg. Sys., Inc.*, 2023 ND 91, ¶ 6, 990 N.W.2d 605.

[¶23] Subject to some exceptions, the U.P.C. severs a parent-child relationship between a genetic parent and a child upon adoption of the child by another. N.D.C.C. § 30.1-04-18 (U.P.C. § 2-119). The relevant exception states:

> A parent-child relationship exists between an individual who is adopted by the spouse of either genetic parent and:
> a. The genetic parent whose spouse adopted the individual; and
> b. The other genetic parent, but only for purposes of the right of the adoptee or a descendant of the adoptee to inherit from or through the other genetic parent.

N.D.C.C. § 30.1-04-18(2) (U.P.C. § 2-119(b)). Again, the official comments to the U.P.C. confirm that when the spouse of a genetic parent adopts an individual, the individual adoptee obtains a parent-child relationship with the adoptive step-parent but may still inherit from the other genetic parent: "a parent-child relationship also continues to exist between an adopted stepchild and his or her other genetic parent (the noncustodial genetic parent) for purposes of inheritance from and through that genetic parent, but not for purposes of inheritance by the other genetic parent and his or her relatives from or through the adopted stepchild." (U.P.C. § 2-119, official comment). We conclude Hanson's adoption by Harlan Hanson was not an adjudication of Harlan Hanson as genetic father under the U.P.C.

## V

[¶24] We have considered all other arguments Hanson raised, and we conclude they either lack merit or are unnecessary to our decision.

## VI

[¶25] We reverse the order denying Hanson's petition to determine heirship and remand for proceedings consistent with this opinion.

[¶26] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr